THE NEW YORK AND GREENWOOD LAKE RAILROAD
COMPANY v. THE STATE.

1. Neglect to keep a bridge in repair across a cut made by a railroad
company, where its road crosses a public highway, so that travel is
obstructed upon the highway, is a breach of duty to the public for
which the owners or operators of the railroad are indictable.
2. The duty of building and keeping in repair such bridges, which was
imposed upon the Montclair Railroad Company by its charter, de-
volved upon a new corporation which purchased the property and
franchises of the old corporation, at a sale made under a decree of fore-
closure, and organized itself under section 56 of the Railroad and
Canal act.
3. The recital of a decree of foreclosure, contained in a duly acknowl-
edged master's deed, is *prima facie* evidence of the existence of the
decree.

Argued at November Term, 1887, before BEASLEY, CHIEF
JUSTICE, and Justices DIXON, REED and MAGIE.

For the plaintiff in error, *Cortlandt Parker*.

For the state, *Wm. S. Gummere* and *Oscar Keen, Prosecu-
tor of the Pleas*.

The opinion of the court was delivered by

REED, J. The plaintiff in error was tried for maintaining
a public nuisance, by reason of its failure to keep in repair a
bridge across a cut, which cut being unbridged, obstructed
travel upon a public highway in the township of Montclair,
in the county of Essex. The question upon the trial was
whether a duty rested upon the defendant below to keep up
a bridge across the cut, which cut was made for the purpose
of laying a railroad track.

The evidence in the case disclosed the following facts: The
Montclair Railway Company was incorporated by an act
passed in 1867. *Pamph. L., p.* 301. By the sixth section
of its charter it had the power to survey, lay out and con-

struct a railway from the village of Montclair to the Hudson river, and to extend the road into the townships of Caldwell and Wayne, and construct a branch in the township of Montclair. By section 9 of the charter a duty was imposed upon the corporation to construct and keep in repair good and sufficient bridges over or under its railroad where any public or other road shall cross the same.

There is in evidence a survey and location of the centre line of part of the extension of the Montclair Railway into the township of Caldwell. There is also in evidence the return of surveyors of highways of a road laid in Montclair township, which road was known as Mountain avenue. It was in evidence that where the located railroad crossed the located avenue there existed a cut twenty feet in depth and sixty-nine feet in width at the top; that this cut was made by the Montclair Railway Company in grading its roadbed, and that the company constructed a bridge across the cut at its intersection with Mountain avenue, which bridge subsequently disappeared.

It appears that under a decree of a foreclosure of a mortgage given by the Montclair Railway Company, the said railway and franchises, including the Caldwell branch, was sold to two gentlemen, who made a deed of the property purchased to a corporation organized under the name of the Montclair and Greenwood Lake Railroad Company. In 1878 the said railroad and franchises, including the Caldwell branch, were again sold under a decree of foreclosure, and bought in by the same gentlemen, and by them conveyed to the plaintiffs in error.

The questions raised are, first, whether the Montclair Railway Company would have been indictable for a failure to bridge and keep in repair a bridge across this cut; second, if so, has this duty devolved upon the present plaintiffs in error?

The duty of the Montclair Railway Company was clearly imposed upon it by the legislature, in behalf of the public, for the purpose of securing the unobstructed use of the highways of the state; therefore a neglect to perform such duty to

the public was indictable according to the rules of the common law. 1 *Bish. Crim. L.*, ¶ 239 ; 2 *Id.*, ¶ 1281.

This rule was applied to railways obstructing a highway in the cases of *State* v. *Warren Railway Co.*, 5 *Dutcher* 353, and *State* v. *Central Railway Co.*, 3 *Vooom* 220.

No argument, in the face of this plain principle, seems needed to exhibit the liability of the corporation by whom the obstruction in the present case was originally caused or permitted to exist. Nor would the liability of the Montclair road be affected by the provision in its act of incorporation that if the company neglect to perform its duty the person or public officer having charge of the repairs or maintenance of the road, after twenty days' notice to the company, may do the work or cause it to be done, and recover the value thereof from the company. This provision does not relieve the company of its duty, but only imposes the same duty upon others, upon a different condition of facts, and for a failure to perform which duty they can also be indicted.

The second question is relative to the devolution of this duty upon the defendants below. The duty is claimed to rest upon the defendants on either of two grounds, one of which is that it arises by virtue of two sales upon foreclosures of mortgages already set forth, under the provisions of paragraph 56 of the act respecting railroads and canals (*Rev., p.* 917), and another ground is that the provision in an act to be found in the Supplement to the Revision, page 828, imposing the duty of repairing bridges upon the owners and operators of railways places this duty upon the defendants below.

The fifty-sixth paragraph of the act respecting railways and canals provides, in substance, that whenever any railroad is sold and conveyed under and by virtue of any decree of the Court of Chancery, and an execution issued thereon to satisfy any mortgage debt, such sale shall vest in the purchaser all the right, title, interest, property, possession and demand, in law and equity, of the parties to the suit in which the decree was made, in the said railroad, with its appurtenances, and all the corporate rights, liberties, privileges and franchises of the

said corporation, but subject to all the conditions, limitations, restrictions and penalties of and concerning the said railroad, contained in its charter, so far as they are in force at the time of the sale. The act provides that the purchaser and his associates, not less than fifteen in number, shall become a new corporation and hold the franchise and property subject to the same conditions as the act imposed upon the purchasers.

The plaintiff in error contends that it was not proven to be the successor of the original corporation under this act. The defect is alleged to consist in the failure of the state to prove that there existed any decree of foreclosure either against the Montclair Railway or against the Montclair and Greenwood Lake Railway Company. It is therefore urged that one of the conditions upon which the burdens in the old charter are imposed upon the new corporation does not appear, namely, that the railroad was sold by virtue of a decree of the Court of Chancery. In considering this objection it is obvious that there is no difficulty presented by the phraseology of the act requiring a decree and sale under it. For if it appear that the defendant was an owner or operator of this road at the time when the breach of duty occurred, he is liable under the act of 1882. By the terms of that act the duty of repairing bridges in crossing public highways is imposed upon any company operating or owning any railroad or owning any completed or uncompleted right of way.

I am of opinion that the defendants were proven to be owners of the Montclair road, including the Caldwell branch. The master's deed was offered in evidence, with the usual recitals of the execution, according to the statutory requirements (*Rev., p.* 1043), in which was the recital of the decree which was the fountain of authority for the writ. The counsel for the plaintiffs in error insists that the master's saying in his deed that there was a decree was no proof of the fact. I incline to the conclusion that these recitals are *prima facie* evidence of the fact of the existence of the decree of foreclosure so set out.

The fourteenth paragraph of the act concerning sales of land

by an officer in pursuance of a decree makes the recitals in a duly acknowledged deed of such officer *prima facie* evidence of the truth of the recital contained therein. And I think that this provision applies to all the usual recitals in an officer's deed, and reaches not only the statements of the steps taken in the execution of a writ, but also a statement of the authority by which the writ was issued. Chancellor Zabriskie, in the case of *Campbell* v. *Dewick & Howland*, 5 *C. E. Green* 186, held that the existence of an ordinance authorizing the assessment of taxes was proven *prima facie* by an allusion to the existence of such ordinance in the tax deed. Mr. Justice Van Syckel, in his opinion in the case of *Henderson* v. *Hayes*, 12 *Vroom* 387, remarked that this act gave to all recitals, including that of the judgment and execution, the force of evidence for the party offering the deed until it was overcome by common testimony. In view of the recital of the decree in the master's deed, I think the defendant below is not in a position to say that there is no proof of the existence of a decree.

But aside from this view of the case, it seems to me that the defendant was not in a position to successfully defend upon the ground that no decree was proven. The defendant had accepted a deed, by the terms of which the ownership of the Montclair company's property, including the Caldwell township branch, was conveyed to the plaintiff in error. Its organization as a corporation was effected pursuant to the terms of the act, for the very purpose of taking the title to the property so purchased. It proceeded to exercise all the powers with which the charter of the original company would invest them as purchasers, so far as the new company wished to exert those powers and privileges. While it occupies this attitude it cannot ignore those duties to the public which are coupled with the enjoyment of the corporate privileges. So long as it holds this property and enjoys this franchise under a colorable title and under a corporate form which is the statutory outgrowth of that title, it must perform its duty to the public as an owner.

Whether the failure to perform such duty assumes the shape of an act of misfeasance or non-feasance, it is responsible. It seems to me clear that in either of the aspects just mentioned the defendants were owners of this railroad, and by the act of 1882 were responsible for the obstruction of the road which was the result of the absence of a bridge across the cut. Apart from the provisions of the last-mentioned act, I think the defendants were liable also under the fifty-sixth section of the Railway act, already set out. As already remarked, the proof in the case was sufficient to show, *prima facie*, that the defendants were purchasers under a decree of foreclosure. As such purchasers they took the old franchise *cum onere*. The words of the act were broad enough to cover a duty like the present imposed by the charter.

The method prescribed by the charter, by conforming to which the Montclair company could run their railway across public highways, was both a restriction and a limitation upon its general power to build a road.

As to the contention that there was evidence to show that this branch had been abandoned, which evidence should have been submitted to the jury, it is sufficient to remark that there was no evidence from which the jury could have legally found an abandonment of the road, even if it were possible, by an abandonment of this branch, to evade the obligation to remove the obstruction to public travel which the condition of their property caused.

The judgment below should be affirmed.