INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY v. ANDERSON COUNTY ET AL.

No. 2495. Decided May 7, 1913.

**1.—Venue—Railway—Injunction—Domicile.**

The place where the general offices of a railway corporation are located is regarded as its domicile, and such domicile is fixed by law where that requires such offices to be maintained at a given place. Accordingly, an action seeking only to enjoin a railway from maintaining its general offices elsewhere than in a county in which, being bound by contract so to do, it was required by statute to keep them (Rev. Stats., art. 6423), was properly brought in such county. Such allegations showed that to be its lawful domicile, though disclosing that it had in fact removed them to another county and designated same in its charter as their location. (Pp. 65-67.)

**2.—Railway—Sale of Property and Franchise—Reincorporation—Obligations of Successor.**

Though, on the sale under mortgage foreclosure of the franchises and property of a railway company, the purchasers, or their successor, the corporation created by them under article 4260, Rev. Stats., 1911, to take and

operate the property, are relieved from mere personal obligations of the sold out company not constituting an incumbrance on the property, they take it subject to the statutory and common law duties of the sold out company to the public. And among these public duties is that to maintain general offices, machine shops, etc., at the place where the predecessor has contracted to keep them for a valuable consideration. Rev. Stats., art. 6423 (4367), art. 6425 (4369), made compliance with such contract a condition of the right to exercise its franchises, and failure a ground to forfeit its charter. The incorporated successor, as to such duties, stands in the same relation as the purchasers operating under the original charter. Rev. Stats., art. 4260. (Pp. 67-73.)

### 3.—Same—Case Stated.

The International & G. N. Railroad Co. bound itself by contract to maintain its general offices, machine shops, etc., in the City of Palestine. It was sold out under mortgage foreclosure, and the purchasers, under authority of article 4260, Rev. Stats., created a new corporation, the International & G. N. Railway Co., to take and operate the property, designating Houston as the location of its general offices. Held that the latter company was bound by the obligation of the former and the statute to maintain such offices and shops at Palestine, and injunction would lie to prevent their removal. (Pp. 67-73.)

Error to the Court of Civil Appeals, First District, in an appeal from Anderson County.

The action was by Anderson County and others against the railway company. The defendant appealed from an order granting temporary injunction, and on the injunction being sustained obtained writ of error.

*Andrews, Ball & Streetman, Williams & Stedman,* and *Wilson, Dabney & King,* for plaintiff in error.—The Court of Civil Appeals erred in holding that the venue of this cause was properly laid in Anderson County and in not holding that the true venue was in Harris County. Rev. Stats., arts. 2996, 1194, subdiv. 27, 1488; Fort Worth & D. C. Ry. Co. v. Jenkins, 29 S. W., 1113, 93 Texas, 660; Montague County v. Meadows, 31 S. W., 694; Little v. Griffin, 33 Texas Civ. App., 515, 77 S. W., 635.

The personal contracts and obligations of one railroad company are not binding on the purchaser of its property and franchises, at such a sale as that alleged, nor upon a corporation formed by such purchaser, as allowed by the laws of this State. The contracts alleged were the mere personal obligations of the sold-out company, which attached themselves to no property, but depended, for performance, upon the continued ability of that company to perform. The Act of 1889 (Rev. Stats., 1911, arts. 6423 to 6425), called the general office statute, imposes the duty, or obligation, therein treated, only upon the company which made the contract and upon companies with which it may have been or may be consolidated, and upon no other; and that statute, therefore, does not change the rule that purchasers, such as plaintiff in error, and their title to the property purchased are unaffected by such contract. Gulf, C. & S. F. Ry. Co. v. Newell, 73 Texas, 334; Morris v. Gulf, C. & S. F. Ry. Co., 67 Texas, 700; Houston & T. C. R. R. Co. v. Shirley, 54 Texas, 125; Williams v. Texas Mid. R. Co., 22 Texas Civ. App., 278, 55 S. W., 130; Harle v. Texas So. R. Co., 101 Texas, 170; Menesha v.

Milwaukee, etc., R. Co., 9 N. W., 396; Hukle v. Railroad Co., 80 Pac., 603; Sherwood v. Atlantic, etc., R. Co., 26 S. E., 943; National Type & Foundry Co. v. Oconto Co., 81 N. W., 129; Hoard v. C. & O. R. Co., 123 U. S., 130.

*A. B. Greenwood, Campbell, Sewell & Strickland,* and *Thos. B. Greenwood,* for defendants in error.—The domicile of a railroad corporation in Texas is where article 4367, Revised Statutes, requires the general offices of the railroad owned or operated by such corporation to be located and maintained: because article 4370, Revised Statutes, requires the public office of the corporation to be established at the general offices and requires the principal business of the corporation to be there conducted, and article 4378, Revised Statutes, provides that "the public office of a railroad corporation shall be considered the domicile of such corporation." Instead of the law permitting a railroad corporation in Texas to effect a change in its domicile by mere removal of its general officers, articles 4367 and 4368, Revised Statutes, prohibit any removal of general offices and general officers, where said "general offices . . . are located on the line of a railroad in a county which has aided said railroad by an issue of bonds, in consideration of such location being made," or where the railroad company is bound by a contract, based on a valuable consideration, to maintain such general offices at their location, and article 4369, Revised Statutes, imposes the penalty of $5000 per day, as well as forfeiture of charter, for the violation of these prohibitions. The averments of appellees' petition fix the domicile of appellant under the articles cited, at Palestine, in the County of Anderson, in the State of Texas. Arts. 4378, 4370, 4367, 4368, 4369, 4376, Rev. Stats.; sec. 4 of Act of Feb. 7, 1853, 3 Gammel's Laws of Texas, p. 1340; sec. 3, art. 10, Constitution of 1876; sec. 1 of Act of March 28, 1885, 9 Gammel's Laws of Texas, pp. 67, 68; Act of March 27, 1889, 9 Gammel's Laws of Texas, p. 1158.

Though "the contracts alleged in the petition to have been made between the Houston & Great Northern Railroad Company and the citizens of the City of Palestine, and between said Houston & Great Northern Railroad Company and the County of Anderson, were merely personal obligations of said Houston & Great Northern Railroad Company and of said International & Great Northern Railroad Company," when originally entered into, yet, when the State of Texas enacted a general law, requiring, as a duty, the continuous performance of the same acts as had theretofore been required by contract only, and prohibited the doing of contrary acts, such general law became and is binding on appellant, and should be enforced by the courts. Arts. 4367, 4368, 4369, Rev. Stats.; I. & G. N. R. Co. v. Bremond, 53 Texas, 99 to 105; 6 Gammel's Laws of Texas, pp. 931, 934; sec. 52, art. 3, Constitution, Atwell, p. 95; 8 Gammel's Laws of Texas, p. 310; Tyler v. St. L. S. W. Ry. Co., 87 S. W., 245, 99 Texas, 501, 502; G., C. & S. F. Ry. Co. v. Newell, 73 Texas, 338, 339; Railway Co. v. Morris, 68 Texas, 59; Harle v. Texas So. R. Co., 101 Texas, 170; secs. 1 and 2, Act of September 1, 1910, 4th

Called Session, 31st Leg., pp. 120, 121; 33 Cyc., 605; 10 Cyc., 283; 2 Elliott on Railroads, 721, 722, 718, 719; U. P. R. R. Co. v. Mason City & Ft. D. R. Co., 199 U. S., 171; U. P. R. R. Co. v. C., R. I. & P. R. R. Co., 163 U. S., 546; House v. Houston Water Works Co., 88 Texas, 241, 242; Porter v. Johnson, 140 S. W., 471; Felton v. K. C., M. & O. Ry. Co., 143 S. W., 650 to 662.

Mr. Justice PHILLIPS delivered the opinion of the court.

Substantially stated, this case involves the right of a railroad company, incorporated under article 6625, Revised Statutes, 1911, for the purpose of owning and operating a railroad previously owned by another company whose franchises, privileges and property had been acquired by the incorporators through a judicial foreclosure sale, to change the location of the general offices, machine shops and roundhouses of the road, made by the former company under contract for a valuable consideration and in a county, which, in consideration of such location, had aided it by an issue of bonds, and accordingly subject to the provisions of article 6423, commonly known as the General Office statute.

The suit was filed in the District Court of Anderson County by Anderson County, the City of Palestine and certain citizens of that city, suing for themselves and in a representative capacity, as plaintiffs. Its purpose was to require the defendant company, the plaintiff in error here, to maintain at Palestine, in Anderson County, its general offices, machine shops and roundhouses, where the petition alleged it was required by law to maintain them. As the basis for the contention that the International & Great Northern Railroad Company was under this duty, and that it was likewise imposed upon the defendant in virtue of its succession to the ownership of the franchises, privileges and railroad of that company, for the decision of the case it is sufficient to say that the petition alleged:

(1) The incorporation, under article 6625, on August 10, 1911, of the defendant for the purpose of owning and operating the railroad formerly owned and operated by the International & Great Northern Railroad Company, whose franchises, privileges and property had been acquired by the incorporators of the defendant through a judicial foreclosure of a mortgage lien.

(2) A contract with the citizens of Palestine, Texas, acting through Judge John H. Reagan, and with Anderson County, entered into in the year 1872, on the part of the Houston & Great Northern Railroad Company, to extend its line, then constructed from the City of Houston to the north boundary line of Houston County, so as to intersect at Palestine the line of railroad of the International Railroad Company, then in operation, extending from or near Hearne, in Robertson County, to Palestine, and to establish and forever maintain at Palestine its general offices, machine shops and roundhouses, in consideration of the issuance and delivery to it by Anderson County of its interest-bearing bonds in the sum of $150,000, which, in reliance upon such contract, were duly voted by the electors of the county, issued and delivered.

(3)  The consolidation, in 1873, of the Houston & Great Northern Railroad Company and the International Railroad Company, under the name of the International & Great Northern Railroad Company, and the approval of such merger by special Act of the Legislature in 1874, by which it was provided that all acts done in the name of either company should be equally binding upon the consolidated company.

(4)  A contract made in the year 1875 by the International & Great Northern Railroad Company with the citizens of the City of Palestine to perform the contract of the Houston & Great Northern Railroad Company, above mentioned, by at once locating the general offices of the International & Great Northern Railroad Company and thereafter forever maintaining the general offices, machine shops and roundhouses of the International & Great Northern Railroad Company at Palestine, in consideration of the bonds of Anderson County issued to the Houston & Great Northern Railroad Company, and the construction at Palestine by its citizens, at their own expense, according to plans furnished by the International & Great Northern Railroad Company, of such houses as might be demanded by it for the occupancy of its officers and employees at reasonable rentals; which contract had been performed by the citizens of Palestine; and whereby it was alleged that the International & Great Northern Railroad Company became bound to forever maintain the general offices, machine shops and roundhouses of that railroad at Palestine.

(5)  That the Houston & Great Northern Railroad Company, in part performance of its contract, promptly located its machine shops and roundhouses at Palestine, and there maintained them until the consolidation of that company and the International Railroad Company; and thereafter to the time of the filing of the suit the machine shops and roundhouses of the International & Great Northern Railroad had been continuously maintained at Palestine by the International & Great Northern Railroad Company and the defendant in compliance with the contracts referred to.

That in the year 1875 the International & Great Northern Railroad Company, in performance of its contract, located and established the general offices of the International & Great Northern Railroad at Palestine, and continuously there maintained them until September 1, 1911.

(6)  That on or about September 1, 1911, the defendant, International & Great Northern Railway Company undertook to change the location of all its general offices, except in the case of two officials named, from Palestine to Houston, Texas, and to establish the most important general office of its traffic manager without the State, in the City of New Orleans, Louisiana, causing certain named general officials and their subordinates to remove to the City of Houston, and there establish so-called general offices for the performance of their duties, and the traffic manager and his subordinates to establish an office at New Orleans; and had declared its purpose to change the location of the general offices of the two officials whose offices had been left at Palestine, and to change the location of the machine shops and roundhouses of the

railroad upon the institution of this suit or any suit of like nature, and would effect such changes of location unless restrained by injunction.

The petition contained further averments in respect to irreparable damage in a large amount, suffered and to be suffered by the plaintiffs through the depreciation of their property situated at Palestine, that had been acquired upon the faith and credit of the contracts referred to, and disastrous consequences to the property and business interests of the City of Palestine, already suffered and that would further result, if such changes in the location of the general offices, machine shops and roundhouses of the railroad, made and contemplated by the defendant, were permitted; the lack of any adequate remedy at law, etc.

Upon these allegations, in substance, and others to which it is not necessary to refer, upon an ex parte hearing a temporary injunction was issued at chambers, restraining the defendant from changing the location of the machine shops and roundhouses of the road from Palestine, as well as the general offices of its superintendent of motive power and master mechanic, and requiring the return to Palestine of such of its general offices as it had moved to and established at Houston and New Orleans.

On the appeal of the defendant from the order granting such temporary injunction, the Honorable Court of Civil Appeals reformed it so as to omit that portion commanding the return of the defendant's general offices to Palestine, and affirmed the order as reformed. 150 S. W., 239.

The questions presented for decision are: (1) Was the venue of the suit properly laid in Anderson county? (2) Are the obligations and duties that lay upon the International & Great Northern Railroad Company in respect to the maintenance at Palestine of the general offices, machine shops and roundhouses of the railroad, likewise enforceable against the plaintiff in error, a distinct corporation and the owner of the road through purchase at foreclosure sale?

The plaintiff in error contends with respect to the first question that the suit is purely one for injunction, the venue of which is confined by the statute to the county of its domicile; and as the petition alleged that its general offices were, at the time of the institution of the suit, in fact established at Houston, in Harris County, and, in effect, alleged that such was the place named in its charter for their location, it is thereby disclosed that its domicile is in Harris County, where alone the suit may be maintained, notwithstanding the further allegation in the petition that such general offices are required by law to be maintained at Palestine, in Anderson County.

Our view is that granting, without determining, the premise of the plaintiff in error, that this is essentially a suit for injunction whose venue may be laid only in the county of its domicile, still the decision of this question is inseparable from that of the main question in the case, inasmuch as the place of the company's legal domicile is necessarily dependent upon its determination. By statute the public office

of a railroad corporation in this State is regarded as its domicile, and wherever the law requires such public or general offices to be maintained, is fixed by the same authority as the place of its domicile. Unlike a natural person, a corporation is not at liberty to change its domicile at will. Whether expressed in the right of charter designation or in a general statute, which contravenes such right, the law governs its location, and there is no power in a corporation to establish a domicile in fact which will prevail over that prescribed by law. The main question in this case is whether under the law the plaintiff in error was required to maintain its general offices at Palestine, in Anderson County, or possessed the right to establish them elsewhere by designation in its charter. The decision of that question in accord with either view determines the place of its legal domicile, and, accordingly, the venue of the suit, though the contention of the plaintiff in error as to its nature be conceded. It is manifest that the question of venue can not, even under the theory advanced by the plaintiff in error, be otherwise rightfully determined. To say that the venue was properly in Harris County assumes that it had the right to change the location of its general offices from Palestine, establish them in Harris County, and thereby fix that as the county of its domicile, which is the fundamental question in the case. On the other hand, to say that the venue was properly in Anderson County involves the contrary assumption, and in like manner forecloses the main question. It is demonstrated, therefore, that under this theory of the case its nature is such as to make the question of venue and the main issue indivisible, and the determination of one conclusive of the other.

With the question of the location of the legal domicile of the plaintiff in error, and therefore the venue of the suit if regarded as one purely for injunction, thus in dispute and incapable of adjudication without a determination of the main issue, it results inevitably that the venue for the trial of such issue must be governed by the allegations of the petition, and was properly laid in Anderson County, as, according to the petition, that is the county of the legal domicile of the plaintiff in error under the allegation that it is required by law to there maintain its general offices. A suit in which the issue is, essentially, the location of the legal domicile of a corporation, according to which the venue is controlled, admits of no other rule for determining the venue. If in such a case the allegations of the petition in respect to the location of the defendant's domicile, in law, do not control, but must yield to averments, which, at most, declare only the illegal establishment elsewhere of a domicile in fact, a plaintiff must be held remitted to a forum whose jurisdiction is inconsistent with his cause of action, involving, as it would here, the concession or surrender, at the outset, of the very issue tendered by the suit and upon which it is proposed to be maintained. The venue of this suit, if regarded as purely an injunction suit, lies in Harris County only in the event that is the county of the legal domicile of the plaintiff in error. According to the petition, however, its legal domicile is in Anderson County. The suit is grounded in a denial of

its right to remove its general offices from that county and by their location establish a legal domicile elsewhere, which negatives the creation of a legal domicile in Harris County by their removal to Houston. If the suit had been filed in Harris County and the defendants in error should succeed upon the main issue, the result would serve to defeat the venue of that county. To sustain the venue of Harris County would necessarily involve the failure of their suit; whereas, if they prevail, the venue of Anderson County is established. In such a case the plaintiff should be held entitled to invoke the venue that accords with the establishment of the allegations of his petition, rather than under the necessity of submitting his cause in a court whose jurisdiction depends upon their refutation. In the absence of fraudulent allegations, this is a right possessed through his tender of the issue which controls the venue, and his assumption of the burden of it; it is not affected by the possibility that the venue may fail with the suit.

The case is not dissimilar in its analogy from that class of cases provided for in the venue statute, where, for illustration, the foundation of the suit is a crime or trespass, in which the right of the plaintiff to maintain the venue in the county where the crime or trespass is alleged to have been committed, is so related to the main issue as to depend upon the establishment of its essential features, but is, nevertheless, a subsisting right. The rule that in such cases permits the allegations of the petition to govern the venue, has equal application here, since from the nature of the case, if regarded as an injunction suit, the question of the legal domicile of the plaintiff in error is inseparable from the main issue to be determined.

Passing to the consideration of the main question, the petition alleges a state of facts that clearly imposed upon the International & Great Northern Railroad Company the obligation to maintain its general offices, machine shops and roundhouses at Palestine, as in respect to the duty of that company in this regard the case made by the petition falls clearly within the provisions of article 6423, Revised Statutes, 1911, which is as follows:

"Art. 6423 (4367). Every railroad company chartered by this State, or owning or operating any line of railway within this State, shall keep and maintain permanently its general offices within the State of Texas at the place named in its charter for the locating of its general offices; and, if no certain place is named in its charter where its general offices shall be located and maintained, then said railroad company shall keep and maintain its general offices at such place within this State where it shall have contracted or agreed, or shall hereafter contract or agree, to locate its general office for a valuable consideration; and, if said railroad company has not contracted or agreed for a valuable consideration to maintain its general office at any certain place within this State, then such general offices shall be located and maintained at such place on its line in this State as said railroad companies may designate to be on its line of railway. And such railroads shall keep and maintain their machine shops and roundhouses, or either, at such place or places

as they may have contracted to keep them for a valuable consideration received; and, if said general offices and shops and roundhouses, or either, are located on the line of a railroad in a county which has aided said railroad by an issue of bonds in consideration of such location being made, then said location shall not be changed; and this shall apply as well to a railroad that may have been consolidated with another as to those which have maintained their original organization."

As above stated, the plaintiff in error is shown to be a distinct corporation from the International & Great Northern Railroad. Though regarded as the successor of that company, it is too well settled to admit of doubt that it would ordinarily stand relieved of all liabilities and obligations, not constituting a prior incumbrance upon the property it acquired, that were personal to that company. While the general rule has been qualified in this State by statutory provision, only to the extent of and as governed by such qualification did the plaintiff in error succeed to such liabilities and obligations of the former company. The question, therefore, as to whether it rests under the same duty as the International & Great Northern Railroad Company in respect to the maintenance at Palestine of its general offices, machine shops and roundhouses, is determined by the nature of that company's obligation in the premises, and the relation of the plaintiff in error to such obligation.

It will be gained from the reading of article 6425 of the same chapter that the Legislature has gone to some pains to compel at the hands of railway companies the observance of the requirements of article 6423. It is as follows:

"Art. 6425 (4369). Each and every railroad company chartered by this State, or owning, operating or controlling any line of railroad within this State, which shall violate any of the provisions of this chapter shall forfeit the charter by which it operates its railroad in this State to the State of Texas; and it is hereby made the duty of the Attorney General of this State, upon the application of any interested party, or on his own motion, to proceed at once against every railroad company owning, operating or controlling any line of railway within this State by quo warranto to forfeit the charter of the railroad company so offending, or violating any of the provisions of this law; (and every such railroad company) shall in addition to forfeiting the charter to that part of the railroad situated within this State be subject to a penalty of five thousand dollars for each and every day it violates any of the provisions of this chapter; said penalty to be recovered in the name of the State of Texas by a suit which shall be filed by the Attorney General in any court in this State having jurisdiction and on the trial the court shall, if it finds that the railroad company has violated any of the provisions of this chapter, render judgment in the name of the State of Texas at the rate of the sum of five thousand dollars for each and every day said court shall find that said railroad company violated any of the provisions of this chapter. And any money recovered from any railroad company under the provisions of this law shall be paid over into the

State Treasury and become a part of the available public free school fund."

In the provision for forfeiture of the charter of any railroad company that violates any article of the chapter there is here expressed in unmistakable terms a plain limitation upon the corporate franchise of any company that in the matter of the location of its general offices, machine shops and roundhouses is subject to the terms of article 6423. Obedience to its requirements is made a condition of the exercise of the company's corporate powers and the enjoyment of its corporate privileges. The right of the corporation to subsist is dependent upon their observance, and its corporate franchise is therefore impressed with their obligation. The duty to which the company is subject under article 6423 being thus imposed upon its corporate franchise and made a condition of its exercise, has all the force and obtains just as fully as though its assumption were made a condition of its grant. It is a qualification of its franchise and inseparable from it; a burden which accompanies its enjoyment, to be borne as a privilege of its use, and inheres in it with even more virtue than that of an original charter obligation because of the nature imparted to it by a general law. The charter duties and obligations of a railroad corporation, for whose violation its charter may be subjected to forfeiture, necessarily inhere in its franchise, because they operate as conditions upon which it may be exercised. For the stronger reason that a statute imports, duties or obligations imposed by a general law, the observance of which is by the same authority made a condition of the corporate existence, must be held to sustain to the corporate franchise a relation of the same continuing force.

They are clearly not to be classed or regarded as merely of a private character. That they have been made the subject of general statutory provision distinguishes them from those duties and obligations which only affect individuals. The concern of the State in their performance, manifested by these enactments of its legislative department and the penalty prescribed for their violation, necessarily impresses them with a public nature. A duty laid by law upon a railroad corporation, for whose breach its charter may be forfeited at the suit of the State, can hardly be considered as a private duty. As its performance is by statute made a condition of the exercise of corporate rights and privileges which vitally affect the public, it is essentially for the benefit of the public. It goes to the essence of the contract between the corporation and the State, in virtue of which such rights and privileges constituting the corporate franchise, are granted and enjoyed. It is founded upon considerations of public policy, as expressed in a general law of the State, and must have been intended to subserve a public interest. For these reasons we are clearly of the opinion that the duty to which, according to the petition, the International & Great Northern Railroad Company was subject, under article 6423, in respect to the maintenance of its general offices, machine shops and roundhouses at Palestine, was a public duty.

It has been heretofore held by this court, and such we understand to

be the law, generally, that a purchaser of the corporate franchise and property of a railroad company under judicial process, succeeds to all of its statutory and common law duties to the public. Central & M. R. Co. v. Morris, 68 Texas, 49, 3 S. W., 457. In the opinion of Chief Justice Stayton in the case of Gulf, C. & S. F. Ry. Co. v. Newell, 73 Texas, 338, 11 S. W., 344, 15 Am. St., 788, is this language:

"By the sale made by the sheriff there was a change made in the ownership of the Central & Montgomery Railroad, and of its franchise, but the corporate existence continues with franchise neither enlarged nor restricted, as before.

"A railway company, in whomsoever may be its ownership, stands charged with every duty and obligation to the public imposed upon it by its charter and the nature of its business, and from those it can not escape without legislative permission so long as its corporate existence continues."

In Acres v. Moyne, 59 Texas, 623, in reference to the operation of the road by such purchasers in the name of the former company, it is said: "The new company, by operation of the general laws of the State, becomes the successor of the sold-out corporation, and occupies to the public, in the future, the same relation the sold-out company did in the past."

These decisions were rendered under former article 4260, brought forward as article 4549 in the revision of 1895, and as amended by the Act of 1910, now article 6624. That article empowered the purchasers, at execution or foreclosure sale, of a railroad and the corporate franchises of a railroad company to operate it in the same manner and to the same extent as though they were the original incorporators of the company, "under the same restrictions as are imposed by their charter and the general laws." They were rendered before the adoption of the Act of 1889, formerly article 4550 in the revision of 1895, and, as amended by the Act of 1910, now article 6625, extending to such purchasers the privilege of incorporating a new company for the operation of the road. In respect to the statutory duties of the former company to the public, a new company, such as the plaintiff in error, organized under article 6625, stands in no more favorable position than that occupied by purchasers under former article 4260, since, as to such company and its ownership and operation of the railroad, it is provided by article 6625 that "by such purchase and organization no right shall be acquired in conflict with the present Constitution and laws, in any respect." By this provision such duties are as clearly transferred to it as they were to a purchaser under former article 4260, and in relation to them these decisions control the question as plainly in one case as the other. In Elliott on Railroads, volume 1, page 753 (2nd Ed.), the text upon this subject is as follows: "Statutes providing for the reorganization of insolvent corporations do not ordinarily impose any additional liabilities upon the purchasers, but simply confer upon them and such persons as they choose to associate with them the power to exist as a corporation and to own and manage the property which they have

acquired as a railroad corporation. The new corporation organized thereunder does not become liable for any debts or liabilities of the old company for which the purchasers would not be liable by the terms of their purchase if incorporated. *But it does generally become liable to perform the public duties imposed by law upon the old corporation."*

The case of New York & Greenwood Lake R. Co. v. The State, 50 N. J. Law, 303, 13 Atl., 1, involved the question of the obligation of a company, organized for the purpose of becoming the purchaser through a foreclosure sale of the franchises and railroad of another, to perform a charter duty of the latter to keep certain of its bridges in good repair. Under a statute imposing upon such purchasers no heavier burdens in respect to the charter obligations of the former company than article 6625 lays upon a company organized thereunder in respect to the statutory obligations to the public of a company to which it succeeds, the Supreme Court held as follows upon the duty, under the Act, of the purchasing company: "It proceeded to exercise all the powers with which the charter of the original company would invest them as purchasers, so far as the new company wished to exert those powers and privileges. While it occupies this attitude it can not ignore those duties to the public which are coupled with the enjoyment of the corporate privileges. So long as it holds this property and enjoys this franchise under a colorable title and under a corporate form which is the statutory outgrowth of that title, it must perform its duty to the public as an owner."

The duty to which the International & Great Northern Railroad Company was subject under article 6423, according to the allegations of the petition, was not one common to all railroad companies in the State. The statute is not of that character, since the conditions which make it operative are those created only by the act of a railroad company. It was a continuing public duty in relation to the maintenance of important instrumentalities connected with the operation of its railroad, which it in effect imposed upon itself in virtue of its own acts. Being of such nature the plaintiff in error could not succeed to the ownership of the railroad and the privilege of operating it, without at the same time succeeding to the duty that similar rights imposed upon the former company.

The duty was more than the personal obligation of that company. It was also of a different character from the ordinary statutory duties that apply to all railroad companies. It affected its right to operate the road. It was not only a limitation upon the continuance of its corporate powers, but a limitation that pertained to the use and enjoyment of essential parts of the railroad property. It qualified their use and enjoyment by an abridgment of the important right of location, which otherwise the company would have possessed as an incident of ownership, and impressed their use with an obligation to maintain the location provided by the statute. As it inhered in the corporate franchise exercised by the former company, it necessarily subsists with the franchise in the hands of its present owner. The transfer to such owner of the right to own and operate the road, also transferred the obligation

attached to such right; and the enjoyment of the right must be in observance of the obligation.

It must be remembered that the relation of the plaintiff in error to this railroad is not that sustained by a company to a railroad which has been constructed under its own charter, or which is unaffected by previous statutory or charter obligations. Its corporate life issues from the ownership of the franchise and property of a former railroad company, since article 6625 conferred upon its incorporators the right of incorporation only in virtue of such ownership. The rights which it possesses and is permitted to exercise in respect to the railroad are founded upon that franchise. It sustains its right of ownership of the property. The plaintiff in error could not succeed to the property without it, since neither is alienable except by statutory consent, and under our statutes one may not be acquired without the other. Sustaining this vital and inseparable relation to the railroad and the title by which it is now held, the plaintiff in error, in our opinion, could not acquire the franchise, and may not exercise the rights in the property which result from its ownership, freed from the limitations to which it was subject in the hands of the former company. The obligation to which that company was subject, according to the petition, in respect to the location of its general offices, machine shops and roundhouses, was clearly a burden upon the franchise, with which it is likewise charged in the hands of the plaintiff in error.

The case is stronger in our opinion than that of Union Pacific R. R. Co. v. Mason City and F. D. R. Co., 199 U. S., 160, in which in an opinion rendered by Judge Brewer, it was held that a railroad company as the purchaser of the corporate privileges and property of another under foreclosure sale, took them subject to a statute enacted in government of the former company's use of a bridge. We quote from the opinion as follows:

"The final question is this: Is the status of the present Union Pacific Railroad Company, the appellant, so different from that of the company to which it is a successor as to render inapplicable the decision in the Rock Island case and to nullify the requirements of the Act of 1871? . . .

"We shall not stop to inquire whether this foreclosure and sale was anything more than a reorganization under the form of a judicial proceeding, nor whether if it were in all respects a *bona fide* sale to an independent third party such sale took the property out of the jurisdiction of Congress, and prevented that body from further legislation in aid of the purpose of the Act, 'namely, to promote the public interest and welfare.' The question before us is whether an amendment to the Act, purely administrative in the character of the burdens imposed, aimed to promote the public interest and welfare, enacted while the title to the property remained in the original company a corporation chartered by Congress, which preserves intact all the pecuniary rights of the company, and whose privileges are accepted and acted upon by the company, is denuded of vitality by a sale to a new company under fore-

closure of a mortgage executed prior to such legislation. That question must be answered in the negative. . . .

"The act giving authority for a large issue of bonds, thereby insuring the immediate construction of the bridge, was accompanied by a proviso that upon reasonable compensation the use of the bridge should be accorded to other companies. Availing itself of the privileges conferred the company accepted the amendment in its entirety and is bound by its terms as fully as though it had embodied them in a contract. So long as the full facilities of the Union Pacific Company were not interfered with thereby, and a reasonable compensation was paid therefor, it can not in any just sense be held that its rights were not duly regarded. And it can not be tolerated that a private individual or a State corporation can, by the purchase at a judicial sale of the property, strike down all the legislation of Congress passed subsequently to the mortgage for the promotion of the public interests. We can not assent to the contention that the present owner of the property holds it free from obedience to all such legislation. Now, as before the foreclosure and sale, the public interests are to be regarded, and not simply private purposes, wishes or prejudices."

There is present in this case not only a plain statutory duty in respect to essential instrumentalities of the railroad acquired by the new company, but an obligation that inhered in and attached to the franchise of the former company. If it be argued that the statute in that case created an easement in the bridge which ran with the property, it can not be denied, we think, that the effect of our statute, in the requirement that the location therein provided of the general offices, machine shops and roundhouses of a railroad company subject to its operation, should be maintained, is to impress them as property or instrumentalities necessary to the use of property, with a character of servitude for the benefit of the particular community, from which they are not exempt in the hands of a purchasing company.

The case has been presented with exceptional ability, and has commanded our earnest consideration. We are fully mindful of the importance of the questions. For reasons, that to our minds are conclusive, they should be resolved as we have indicated. The judgment of the Honorable Court of Civil Appeals is accordingly affirmed.

*Affirmed.*