### PERKINS v. NORRIS.

### No. 3811.

Court of Civil Appeals of Texas. Texarkana. March 5, 1930.

Rehearing Denied March 20, 1930.

Smithdeal, Shook, Spence & Bowyer, of Dallas, for appellant.

Clark, Harrell & Clark, of Greenville, for appellee.

HODGES, J.

This suit was filed by the appellee, Norris, against the appellant, on a note dated February 4, 1925, and due November 4 following. It was payable to the First National Bank of Greenville, Tex., and was signed "S. B. Perkins by S. B. Brooks." The testimony showed that the note was transferred to Norris for a valuable consideration the day before its maturity. The indebtedness evidenced by the note began with a similar note payable on demand to the First National Bank of Greenville for the sum of $7800, signed "S. B. Perkins by S. B. Brooks." There were several renewals of the original note, all payable to the First National Bank of Greenville; the note sued on being the last renewal. As a basis of liability, the appellee pleaded the execution of the original note by Brooks in Perkins' name was for the purpose of taking care of an overdraft against Perkins in the First National Bank of Greenville, and that the proceeds of that note were deposited to the credit of Perkins on the books of the bank; that thereafter the note was from time to time renewed, the last renewal covering the balance due amounting to $7,700. It

was further alleged that Brooks was authorized to sign Perkins' name to the note and the renewals thereof.

Perkins, who resided in Dallas county, pleaded, first, his privilege to be sued in that county. He also answered denying under oath the execution of the note by himself or by any other person authorized to sign his name thereto. Other defenses were pleaded which will be hereafter referred to.

The plaintiff, Norris, by supplemental pleading, alleged that, if Perkins did not authorize Brooks to sign his name to the note, he thereafter, with full knowledge of all the material facts, ratified the execution of the note, and that the indebtedness evidenced by the note was due from Perkins to the bank at the time the note sued on was executed. He further pleaded that, by reason of the conduct of Perkins after knowing that his name was signed to the note, he was estopped to deny his liability thereon.

The court submitted only one issue to the jury, namely: "Do you find from a preponderance of the evidence that the defendant S. B. Brooks, with knowledge of all the material facts relative to the signing of his name to the $7700.00 note sued on, ratified the acts of said S. B. Brooks in signing his name to the note?" The jury answered that interrogatory in the affirmative, and upon that finding the court entered a judgment for the full amount of the note, together with interest and attorney's fees.

■ In the first group of assignments appellant attacks the refusal of the court to allow him a separate trial on his plea of privileges. It is contended that, since the court held that the only issue in the case was that of ratification, Perkins had the right to have that issue tried in the county of his residence. The note was by its terms payable in Hunt county; and that is the place where the plaintiff had a right to have any defense to the merits of the suit tried. If the appellant ratified the acts of Brooks, his liability would be precisely the same as would arise from his own signature or that of an authorized agent— a promise to pay in Hunt county. Hence the issue of ratification was inseparably connected with the plea in bar upon which the appellant relied as a defense. A finding upon that issue, either for or against the defendant, would be decisive of the question of his liability. We do not think the court committed any error in refusing a separate trial on the plea of privilege. Ry. Co. v. Anderson County, 106 Tex. 60, 156 S. W. 499; Diamond Mill Co. v. Adams-Childers Co. (Tex. Civ. App.) 217 S. W. 176.

■ The next question is, Was the evidence sufficient to support the finding of the jury that Perkins had ratified the act of Brooks in signing Perkins' name to the note sued on? The principal witness, if not the only one,

who testified for the plaintiff upon that issue, was S. B. Brooks, by whom the note was signed. The record shows that Brooks had for some time been a stockholder and director of the First National Bank of Greenville, and that at the time the original note was executed he was one of its managing officers. A short time after Norris acquired the note sued on, and before the institution of this suit, the First National Bank of Greenville was closed. Perkins was a stockholder in the bank, and had been at one time one of its directors. Some time prior to 1923, Brooks and Perkins, who were close personal friends, became jointly interested in several financial ventures which were conducted, partly at least, through the Greenville bank. Both were considered men of wealth, and both had extensive credit at that time. Brooks later became insolvent, and went into bankruptcy. Brooks testified that he and Perkins had been intimately associated in several financial enterprises, and that, at the time the original note for $7,800 was executed on August 4, 1923, Perkins was absent from Texas and remained away some time. He said:

"On August 4 something occurred that required me to do something about his account. It developed during the day that Mr. Perkins' account was needing a credit of $7,800.00, according to my recollection, and I executed a note which I signed 'S. B. Perkins by S. B. Brooks' and further endorsed it 'S. B. Brooks,' to show my good faith. I handed the note to Mr. D. C. Meade, the assistant cashier of the bank, and told him to put it to Mr. Perkins' credit—his personal credit."

The witness then went into a detailed statement of the different items which on that date were charged to the account of the appellant, resulting in an overdraft against his account and bringing about the necessity for executing the note to which he refers. He then continued:

"There was an agreement between Mr. Perkins and myself that I would take care of his speculative contracts while he was away; that I would protect the margins for him. Here is one that I recall: 70,000 bushels of grain with Post & Flagg of New York; that is my recollection of it. I was to take care of it by handling it just like I did, by executing a note for him. He did not have the money and I executed the note, and when he returned from New York or Colorado I told him I had executed a note for him in the sum of $7,800.00 to the First National Bank of Greenville, and told him that while he was gone I had been called on for margins, etc. It was satisfactory to him when I told him that; it was always satisfactory with him; I never had a word from him in my life. I did not try to conceal anything from Mr. Perkins in these joint transactions. On the contrary, I made these statements which I

sent to him, the statements which have been testified about. The statement which you hand me is the identical statement he received, as I remember it. I had it made in triplicate. I do not remember when this statement was made up; I do not recall the date. What date is Jeff Davis' birthday? The bank was closed on that date. The reason I want to know the date of Jeff Davis' birthday is because Mr. Perkins came from Dallas on that day and I went to Paris with him. * * * That was in 1923 I think—somewhere about June 2, 3 or 4. I know the bank was closed because I went to Paris with him. We came back to Greenville that night, and I had this statement made up for him as he requested. He went home with me that night, and we spent a part of the night looking over the statement—on my dining-room table in my home on Washington Street, where he spent the night. I might be mistaken as to that being June, 1923; I would not be positive about it. At any rate, the particular statement I have identified is the one we talked about. At that time he and I looked over each and every voucher and check for debit slip, and I explained to him what each and every one was at that time. All the debits shown in the statement were at that time supported by the original charge sheets or checks, and we went over each one of them. We also went over the items of credit. Mr. Perkins did not raise any question about any item in the statement. * * * He did make a notation on the statement in his own handwriting. There were two items in the statement—there was a credit of $12,000.00 on August 11; it says, 'Note W. A. Brooks, $12,000.00,' and he was credited with that amount; and on August 4 this note of $7,800.00; and Mr. Perkins wrote the words 'I owe' opposite each when I explained them to him. * * * In the statement I have here a pencil mark is drawn through the words 'I owe.' I do not know who did that. The first time I discovered it was December 20 or 25, 1927. * * * I heard Miss Howard trace the $7,800.00 note through its various renewals. These various renewals were made by me. I signed his name to them, and then mine—'S. B. Perkins by S. B. Brooks.' I do not remember any occasion when Mr. Perkins and I discussed the fact that they were being renewed that way other than the time I checked the statement with him. I sold the last note for $7,700.00 out of the bank. The note you hand me is that note, signed 'S. B. Perkins by S. B. Brooks.' That is the last renewal of the original note."

Appellant testified that he examined the statement which had been prepared for him by Brooks showing the condition of his account with the bank. He admits writing the words "I owe" opposite the two items mentioned by Brooks, but says that he wrote them there for a different purpose— simply as memoranda for future investigation. He also stated that he at that time questioned the authority of Brooks to execute this note for him; that he told Brooks he could not understand why he (appellant) should be liable for the amount covered by the note. In short, he denied that he ever in any way admitted his liability on the note.

There is some uncertainty in the testimony as to the date when Perkins and Brooks went over the bank statement about which Brooks testified showing the status of Perkins' account with the bank. Brooks seems to think it occurred as early as June, 1924, or in the summer of 1925, while Perkins places it some time later. But they both apparently agree that it was after the last renewal note had been transferred to Norris. According to the testimony, that transfer took place on November 3, 1925. Brooks testified that the note was referred to by him and Perkins in their discussion of the statement as the "Norris note." In any event, the evidence warranted a finding that the declarations and conduct of Perkins tending to show a ratification of what Brooks had done occurred after the last renewal note had been signed and transferred to Norris.

While the testimony was conflicting upon the issue of ratification, the jury had a right to accept the version given by Brooks and to disbelieve that of Perkins. The question was one of credibility of two opposing witnesses, and the finding of the jury under such circumstances is binding upon this court. The jury also might conclude that Perkins became aware of the fact that the last renewal of the note had taken place and that Norris was the holder approximately two years before demand for payment was made on him by Norris in December, 1927. According to the testimony of Brooks, that was the first time that he (Brooks) had ever heard that Perkins denied his liability on the note. After Norris had demanded payment of Perkins, some correspondence between the two followed. In a letter to Norris dated December 19, 1927, Perkins wrote:

"I have yours of December 18 in regard to the note of $7700.00 executed by S. B. Brooks to which he signs my name. I previously advised you that I did not sign this note, and will now say that I did not receive any part of the proceeds of this note. You undoubtedly have been misled by your inspection of the records at Greenville. I did not profit by this transaction in any way whatever, and the only liability that I could possibly have would be in not giving you notice when it was first brought to my attention that such a note was in existence, which was more than a year after the execution of the note. I would have notified you at that time had it not been for the fact that it would have been most embarrassing for Mr. Brooks. I therefore

allowed it to run along, hoping that he would be in a position to pay it off."

That letter indicates that the existence of the note and that it was in the hands of Norris was known to Perkins some time before he repudiated his liability. The letter also indicates that Perkins felt that he owed some duty to notify Norris that he did not intend to pay the note.

■■ After a careful examination of the record, we have concluded that the evidence was sufficient to support the finding of the jury on the issue of ratification. The intimate relations which the evidence shows existed between Brooks and Perkins at the time these several transactions occurred and the silence of Perkins for a considerable length of time after he knew that the note was outstanding in the hands of Norris were cogent facts which the jury might consider in determining whether or not Perkins intended to adopt and abide by what his friend had done during his absence. It is true that delay alone in repudiating an unauthorized act of another is not conclusive evidence of ratification, but it is a circumstance which the jury or the court may consider in passing upon that issue. Cameron v. Gibson (Tex. Civ. App.) 278 S. W. 522; Meyer v. Smith, 3 Tex. Civ. App. 37, 21 S. W. 995; Lynch Davidson & Co. v. Denman Lbr. Co. (Tex. Civ. App.) 272 S. W. 803; Harmon v. Leberman, 39 Tex. Civ. App. 251, 87 S. W. 203; Chenault v. Honaker (Tex. Civ. App.) 261 S. W. 825; 2 Texas Juris., pp. 490, 491, and cases there cited.

■ As explanatory of the issues submitted, the court gave the following: "To ratify, as the word 'ratify' is used in this charge, means to approve, adopt or confirm by one person as his own an act previously done by another in his name and for his benefit, but without his authority." Appellant objected to that explanatory statement, on the ground that it was insufficient and failed to define the words "adopt," "approve," and "confirm," as therein used. Appellant also complains of the refusal of the court to give requested special charges defining what was meant by the words "material facts" as used in the special interrogatory propounded to the jury. There is no probability that the jury was induced to make an improper finding upon the issue submitted because of a misunderstanding of the meaning of the word "ratify" or the manner in which that issue was submitted. It may be conceded that under some circumstances the court should tell the jury what the words "material facts" mean, but in this case no such further definition was called for. Perkins did not claim that he was induced to do or say anything which might tend to show ratification because of a misunderstanding of the circumstances attending the execution of the note, or the uses to which the proceeds of the note were applied. His defense was

a categorical denial of having done or said anything which might be construed as an adoption or approval of what Brooks had done. His testimony was in direct conflict with that of Brooks as to what occurred at the time the bank statement was presented and Perkins first became acquainted with the fact that the note had been executed. Under the particular facts of this case, we think the charge of the court was sufficient.

■■ During the progress of the trial, and while the appellant was being cross-examined, he was interrogated concerning some deeds of trust which he held on property owned by Brooks, and was asked if it was not true that he had withheld those instruments from record until a short time before a petition in bankruptcy was filed against Brooks. The question was objected to on the ground that the answer would be immaterial and irrelevant to any issue made by the pleadings or to any issue to be submitted to the jury. The objections were overruled by the court, and appellant testified that in January, 1925, Brooks had executed and delivered to him a mortgage on some property in Greenville, and that those mortgages were not put on record until December, 1928. Thereafter, during the closing argument, Judge L. A. Clark, attorney for the appellee, in discussing appellant's testimony, alluded to the fact that appellant held those mortgages and withheld them from the public records until a short time before Brooks went into bankruptcy. The following is the explanation in the bill of exceptions to that argument appended by the trial judge:

"In the argument what Judge Clark said was that S. B. Perkins had taken mortgages from S. B. Brooks on property on Lee and Washington Streets, and that by not placing the instruments of record he had concealed the fact from the public, and that the public was not aware of the existence of such mortgages. No objection was made to the court except that after the statement referred to above was made counsel for defendant prepared and requested the court to give an instruction to the jury to disregard the statement. The request was refused, and defendant's counsel excepted generally."

The appellee had pleaded in part as follows: "Plaintiff further shows that knowing as he did that this indebtedness was known as the 'Norris note' and that it was outstanding, he not only failed to notify Norris, or to indicate to him, of his claim now asserted that he was not liable thereon, but purposely refrained from doing so in the hope, as he says, that Brooks would discharge the note himself; and in addition to this all the time holding a deed of trust, mortgage or transfer of substantially all of the property Brooks had of any value, and keeping the same from record, knowing that in doing so said Brooks

was being held out to the public as a man of large means and entitled to large credit."

Appellant had pleaded the existence of the deeds of trust, alleging that "Norris knew that he, Brooks, was indebted to defendant, and knew defendant had a lien on the building in Greenville occupied by Perkins Bros. Company, or at least knew defendant was in possession of said building, and knew all the facts and circumstances with reference to the financial, business and social affairs of said Brooks." The argument objected to was no more than a restatement of what had been testified to by Perkins and what had been pleaded by the plaintiff and, in effect, specially denied by the defendant in the suit. The testimony was probably admitted in support of the plea of estoppel, upon which the appellee relied as one of the grounds for establishing the liability of the appellant on the note. We are of the opinion that there was no error in admitting the testimony and that the court did not abuse his discretion in refusing to instruct the jury to disregard the argument.

During the further cross-examination of the appellant, he was interrogated concerning certain corporation stock which had been bought through Jenks, Gwynne & Co., Brokers, for the joint account of the appellant and Brooks. Over the objection, on the ground of immateriality, the appellant was required to testify that he did on December 31, 1927, take over corporation stock bought through Jenks, Gwynne & Co., Brokers, for the joint account of Perkins and Norris, and that such stocks were worth $159,000 on December 31, 1927, that there was an indebtedness of $84,000 against said stocks, and that they were taken over the day, or the day before, or about the time the petition in bankruptcy was filed against Brooks. The admission of that testimony is assigned as error. The record shows that appellant and the witness Brooks were both interrogated at considerable length regarding the items appearing as charges against appellant in the bank statement about which Brooks testified; and in order to prove that Perkins received no benefit from some of the items charged against him, appellant had testified in his own behalf that there was a loss of approximately $126,000 on the joint transactions of him and Brooks, and a loss of $8,342.75 on the Jenks, Gwynne & Co. account alone. The appellee claims that, in view of that testimony, he had a right to elicit the testimony objected to in his cross-examination of appellant. We are of the opinion that the court committed no error in overruling the objections made.

Appellant also objected to this question asked Brooks in his direct examination: "Did anything occur on August 4, 1923, that required you to do anything about S. B. Per-

kins' account?" The objection was that it called for a conclusion of the witness. If there had been an affirmative answer to that question alone, it probably might be subject to the objection; but, in view of the fact that Brooks answered by detailing all of the facts which he considered necessary for him to do something about Perkins' account, the error, if any, was harmless.

We have considered the remaining assignments of error, and overrule them without discussion.

The judgment of the court below will be affirmed.