**ARVIN HARRELL COMPANY,**
Appellant,

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY,** Appellee.

No. 11250.

Court of Civil Appeals of Texas.

Austin.

Dec. 16, 1964.

Adams & Browne, Beaumont, for appellant.

Clark, Thomas, Harris, Denius & Winters, John Coates, Austin, for appellee.

ARCHER, Chief Justice.

This is an appeal from an order denying appellant a mandatory injunction requiring appellee to furnish appellant telephone service upon appellants making a reasonable deposit.

Appellant applied to the telephone company for service and after considerable discussion the appellee agreed to install a telephone conditioned on appellant making a deposit of $500.00 which appellant declined to do.

The suit was filed by appellant against appellee in the sum of $1,000.00 for actual damages, and exemplary damages in the sum of $5,000.00, with additional sum of $3,750 as attorney's fees in the trial of the case.

Appellant sought an order directing appellee to make the installation of telephones, as requested, and to enjoin the company from oppressive and capricious conduct in requiring appellant to deposit $500.00.

Plaintiff stated that it would make a $50.00 deposit and that defendant had refused to make the installation until a deposit of $500.-00 was made, and that plaintiff was unable to make such deposit.

A hearing was had on April 10, 1964, and on April 28, 1964, an order was rendered, in part as follows:

"It is accordingly ORDERED, ADJUDGED AND DECREED that the prayer of the Plaintiff for a temporary

mandatory injunction requiring the Defendant, Southwestern Bell Telephone Company, to install telephone service for the Arvin Harrell Company without a cash deposit of $500.00 or the separate guaranty of a responsible party, be and the same is in all things denied with costs adjudged against the Plaintiff."

The appeal is based on eight points and are to the effect that the trial court erred in denying a mandatory order directing appellee to furnish telephone service to appellant because appellee had contracted to do so, and in denying such order upon the payment of $19.50 or $50.00 as deposits respectively.

We do not believe the trial court abused its discretion in denying a mandatory injunction.

The Supreme Court, in Story v. Story, 142 Tex. 212, 176 S.W.2d 925 held:

"It is the office of a temporary injunction to maintain the status quo pending the determination of the controversy between the parties."

The purpose of an injunction is to maintain the status quo.

In Kane v. Gulf, C. & S. F. Ry. Co. et al, Tex.Civ.App., 176 S.W.2d 965, no writ history, it was held:

"Hence the granting of a mandatory temporary injunction, in the face of such consequences, would have completely disrupted, rather than maintained, the status quo theretofore existing in regard to the very matter in controversy."

A temporary mandatory injunction will be granted only with great caution and in case of extreme hardship.

International & G. N. Ry. Co. v. Anderson County, Tex.Civ.App., 150 S.W. 239, affirmed 106 Tex. 60, 156 S.W. 499.

The record does not disclose any perceptible or specific damage. Appellant at the time of the hearing had telephone service at an answering service. An employee of such service answers all calls made to appellant.

On November 19, 1963, Harrell and Whitlow Elzner had a conversation with an employee of appellee and the appellee discovered that Elzner was interested in the organization and that he had filed for bankruptcy owing appellee $400.00 or $500.-00.

Article 1440, Vernon's Ann.Civ.St., provides for installing services as a condition precedent to furnishing the same and the utility shall pay 6% interest per annum on such deposit. The telephone company has the right to require deposits.

Community Natural Gas Co. v. Moss, Tex. Civ.App., 55 S.W.2d 224, 225, no writ history.

We believe appellee's requirement of a $500.00 deposit or a separate guaranty was reasonable.

Arvin Harrell, the President of appellant is employed by a local funeral home as a mortician on a monthly salary, and his qualifications as a joint contractor as he related are:

"My experience in the building business has been my association with Mr. Elzner. I mean, I would be employed by him for a period of approximately a year, and I was connected with the building quite a bit then. But my knowledge of the building business is not great. That is the reason I have Mr. Elzner hired to run the business for me. I am in the funeral business. I am just president of the corporation. I confer with him on these situations."

Mr. Elzner is the only employee of appellant and was a building contractor until he went into bankruptcy in 1963.

The evidence was insufficient to justify the issuance of a temporary mandatory injunction.

The judgment of the trial court is affirmed.

Affirmed.

HUGHES, Justice (dissenting).

The plain unvarnished facts of this case are that appellee agreed to furnish appellant the telephone service it desired without requiring any deposit until appellee learned that appellant had in his employ one Whitlow Elzner who was indebted to appellee in the sum of several hundred dollars.[1]

Appellant is a private corporation with authorized capital stock of $50,000.00, with at least $2000.00 in liquid assets, and is not shown to have any debts except for a typewriter.

1. The following is taken from appellee's brief:
"An examination of the facts surrounding the alleged contract breach are as follows:
"1. On November 19, 1963, Arvin Harrell and Whitlow Elzner went to the office of Southwestern Bell Telephone Company and had the following conversation with a telephone employee, Mr. Dunbar:
" 'Q That is when Mr. Elzner and you had conference with Mr. Dunbar?
" 'A Well, I didn't. Mr. Elzner did. I was just along with him at that day. We had been on some other business at that day, and I just went to the telephone company with him. I was just sitting in on the conversation. And Mr. Elzner brought up the subject that Mr. Harrell would like to put in a telephone there at that address, [Mr. Elzner's home] that he was going into business out here, and we were setting up a business, and he would like to have a phone put in there. And I said, "Yes," to Mr. Dunbar, "that is what I want to do."
" 'Q Now, actually, I think I said December 19th; that was November 19, 1963, or about there, was it not?
" 'A It was about there.

Mr. Whitlow Elzner does not have any interest in the appellant corporation. He is only its employe.

Appellee pleaded that its requirement of a $500.00 deposit from appellant was "a nondiscriminatory measure which is customary with business situated similarly to the Arvin Harrell Company and operating under circumstances comparable to those involved herein."

Appellee offered no proof of this allegation nor did it offer any proof that it requires any customer to make a deposit for service.

No one would deny that a public utility, such as appellee, is subject to the rule prohibiting unreasonable or unjustified discrimination in rates and service. City of Texarkana v. Wiggins, 151 Tex. 100, 246 S.W.2d 622.

" 'Q All right, sir. And you were told at that time that a deposit for $500 would be required or a personal guarantee in order to do what you wanted to do?
" 'A No, I wasn't told.
" 'Q Well, you heard Mr. Dunbar tell Mr. Elzner that?
" 'A Yes.'
"2. On March 24, 1964, Arvin Harrell asked that telephone service be furnished the Arvin Harrell Company by giving it a number to be answered at the Hastings Answering Service. The telephone company agreed to do so and required no deposit because it was the type of service which would probably not be used for long distance calls.
"3. Arvin Harrell talked with Mrs. Hastings, of Hastings Answering Service, on the morning of March 25, 1964, about having service installed at Whitlow Elzner's home and Mrs. Hastings called the appellee for Harrell and requested in his behalf that Southwestern Bell put a telephone in Elzner's home.
"4. At this point the telephone company discovered the involvement of Elzner and ever since has refused to give the Arvin Harrell Company service without the $500.00 deposit or a guaranty of a responsible person.
"This all occurred after Mr. Elzner had filed for bankruptcy owing the appellee $400 or $500."

Appellee has no legal right to deny appellant service upon the sole ground that it employs a person who is persona non grata to appellee. This is a collateral matter. Sec. 43, Am.Jur. p. 588; 73 C.J.S. Public Utilities § 7, p. 998. In Nueces County Water Improvement District No. 1 v. Spring, 139 Tex. 297, 162 S.W.2d 155, n. w. h., the San Antonio C.C.A., Justice Norvell[2] writing, stated, "It is well settled that 'a public utility corporation can not refuse to render the service which it is authorized by its charter (or by law) to furnish, because of some collateral matter not related to that service.' "

In Garner v. City of Aurora, 149 Neb. 295, 30 N.W.2d 917, it was held that a public service corporation cannot refuse to furnish public service because patron is in arrears with it because of some collateral or independent transaction, not strictly connected with particular physical service.

In 47 Tex.Jur.2d, Public Utilities and Service, Sec. 5, p. 397, it is stated, citing Texas Court decisions, that a public utility, unjustifiably refusing service "may properly be compelled by either prohibitory or mandatory injunction, or by mandamus."

The telephone service desired by appellant is shown to cost $13.50 per month, a $5.00 installation fee and not subject to its being used for long distance calls.

There is no provision in appellee's franchise or in the ordinances of Austin relative to deposits for service. It is not denied, however, that under Art. 1440, V.T.C.S., a public utility may require deposits to be made.

Since this record shows, without dispute, that appellee is discriminating against appellant in demanding a $500.00 deposit or other security without legal justification, I would reverse and render judgment granting appellant a mandatory writ of injunction or mandamus requiring appellee to furnish appellant the requested service upon it posting a reasonable and proper bond not to exceed $100.00, and paying the customary installation and other fees, and its dissolution conditioned on paying, without delinquency all service charges.

I respectfully dissent.

2. Now an Associate Justice of the Texas Supreme Court.