THE BANGOR FURNACE COMPANY

*v.*

CHARLES J. MAGILL.

*Filed at Ottawa January 23, 1884.*

1. PRACTICE—*waiver of objection, by pleading to merits.* Pleading the general issue and going to trial upon the merits, is a waiver of any defects in the service of process or erroneous rulings of the court in respect to such service, and it even obviates the necessity of any process or service at all.

2. CONTRACT—*for transportation, construed, as to furnishing articles for carriage.* A contract whereby one party is obligated to carry by a vessel on the lakes ten thousand tons of ore for a defendant from one place to another, and the latter to pay a certain price per ton as fast as received, requires the latter to furnish the ore at the place named for transportation, and a failure to do so is a breach of the contract on his part.

3. MEASURE OF DAMAGES—*neglect to furnish ore for transportation.* In a suit upon a contract whereby the plaintiff was to transport by vessel ten thousand tons of ore during a particular season from one place to another, in which it was shown the defendant failed to furnish all the ore that was to be carried, the court instructed the jury that the plaintiff, if a breach of the contract was proved, was entitled to recover the difference between what he would have earned or made as net profits if the remaining ore had been delivered for shipment under the contract, and what the vessel earned in other employment during the remainder of the season after notice that no more ore would be furnished for transportation: *Held,* that the instruction was as favorable to the defendant as he had any right to ask.

4. APPEAL—*reviewing facts.* The amount of damages sustained by a plaintiff is a question of fact not open to review in this court, and the rule is the same whether the damages are found by the court or the verdict of a jury. This applies only in that class of cases in which this court is precluded from examining controverted questions of fact.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. KIRK HAWES, Judge, presiding.

Mr. ROBERT RAE, for the appellant:

Service of process upon the vice-president of a foreign corporation is not authorized by statute. A plea in abatement was filed to the writ, asking that the same be quashed. *Union National Bank of Chicago* v. *Bank,* 90 Ill. 56.

At common law a corporation can not be served outside of the State under whose laws it is created. *Midland Pacific Co.* v. *McDermid,* 91 Ill. 170; *Tappan* v. *Boner,* 5 Mass. 196; *Peckham* v. *North Parish,* 16 Pick. 286; *McQueen* v. *Middleton,* 16 Johns. 5; *Clark* v. *Stevens & Co.* 1 Story, 536; *Bushel* v. *Insurance Co.* 15 H. & R. 176; *Missouri Telegraph Co.* v. *N. B.* 74 Ill. 217.

The contract in this case was severable, each sum being recoverable on the performance of the several items. *Debal & Plank* v. *W. & E. H. Nemott,* 9 Iowa, 403; *Withers* v. *Reynolds,* 2 B. & A. 404; *Sircle* v. *Patterson,* 14 Wend. 276; 2 Smith's Leading Cases, 42. See, also, 13 Wis. 658.

On the question of damages, counsel cited *Winnesheik Ins. Co.* v. *Scheuller,* 60 Ill. 470; *Bourland* v. *Gibson,* 7 Bradw. 230.

As to demurrer to evidence, or motion to instruct jury to find the issues for defendant, counsel cited *Phillips* v. *Dickerson,* 85 Ill. 15; *Pratt* v. *Stone,* 10 Bradw. 635; *Houfes* v. *Wilder,* 37 Ill. 510; *Coleman* v. *Johnson,* 84 id. 269.

Obedience to order to answer over by filing the general issue was not a waiver of the plea in abatement to the original writ. *Delaney* v. *Clement,* 3 Scam. 202; *Drake* v. *Drake,* 83 Ill. 526; *Harkness* v. *Hyde,* 98 U. S. 478.

Messrs. SCHUYLER & FOLLANSBEE, for the appellee:

Defendant was to employ the "Lotus" for the whole season, and as iron ore was the only thing mentioned in the contract

to be carried, this fact precludes the idea that anything else was contemplated, or that it was not to be furnished pursuant to the contract. *Expressio unius est exclusio alterius. Hair* v. *Horton,* 5 B. & A. 715; *Cook* v. *Jennings,* 7 T. K. 381; *Hill* v. *Bearse,* 10 Allen, 406; 2 Parsons on Contracts, (5th ed.) 516.

The measure of damages is the difference between what the vessel could have earned by performing the contract, and what she actually earned in other employment. (Woods' Mayne on Damages, 253, sec. 371.) So that if the defendant was not bound to furnish the ore, it was bound to employ the vessel in any event, and was liable for a breach in not doing so. *Aspdin* v. *Austin,* 5 A. & E. 670.

If a party appears for any purpose except to object to the process or service, he waives all objections thereto, although the service may be void, or there may have been no service. *Mitchell* v. *Jacobs et al.* 17 Ill. 235; *Easton et al.* v. *Altum,* 1 Scam, 250; *Long* v. *Trabue,* 8 Bradw. 132; *Knott* v. *Pepperdine,* 63 Ill. 219; *Mineral Point R. R. Co.* v. *Keep,* 22 id. 9; *Baldwin* v. *Murphy,* 82 Ill. 485.

The defendant, by filing its plea of the general issue, waived its demurrer. *Cobb* v. *Ingalls,* Beecher's Breese, 233; *Ferguson* v. *Rawlings,* 23 Ill. 69; *Burnham* v. *Webster,* 5 Mass. 266; *Lindsay* v. *Stout,* 59 Ill. 491.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This action was brought by Charles J. Magill, against the Bangor Furnace Company, on a contract made and entered into by Rhodes & Bradley, as agents for and on behalf of defendant. The contract is set out *in hæc verba* in the declaration, from which it appears plaintiff agreed the "Lotus" would carry seven thousand tons of iron ore during the season of 1873, from Escanawba to St. Joseph, in Michigan, for two dollars per ton, and also three thousand tons from Mar-

quette to St. Joseph, for three dollars and twenty-five cents
per ton, "freight to be due and payable upon delivery of each
cargo at St. Joseph," and in consideration of the undertaking
of plaintiff, Rhodes & Bradley, agents, agreed to employ such
vessel, and agreed to pay the freights, as above mentioned. It
was further agreed, in case the "Lotus" was unable to carry
all the "ore stipulated for above," then another standard
vessel, of about the same draught of water, might be substi-
tuted on the same terms, should plaintiff elect to do so.    It
was also further agreed plaintiff should be "personally re-
sponsible" for the delivery at St. Joseph of the whole ten
thousand tons of ore, and that Rhodes & Bradley would
promptly "lighter off" all cargoes from the vessel or vessels
carrying such ore.    The contract contains other provisions,
but it will not be necessary to state them to an understand-
ing of the questions of law discussed.    The judgment ren-
dered in the trial court having been affirmed in the Appellate
Court, there are no questions of fact to be considered in this
court.    Whether Rhodes & Bradley were the agents of de-
fendant, and whether defendant was an undisclosed principal,
to whom credit was given, and whether plaintiff waived the
breach of the contract, were all questions of fact, and the
issues as to them were found in favor of plaintiff.    It will
be assumed these facts were well found in favor of plaintiff,
under the evidence, and will be so treated in considering the
questions of law raised.

The defendant is a corporation existing under the laws of
the State of Michigan, and it is objected the court did not
obtain jurisdiction by any lawful service of process on it.
Pleas in abatement, and motions calling in question the suffi-
ciency of the service, were filed or made in the trial court,
and the decisions of the court touching them are assigned for
error.    An answer to all the objections taken to the service
of process is, that after the decisions of the court of which
complaint is made, defendant filed the general issue to the

declaration, and had a trial of the cause upon its merits. That, by the previous decisions of this court, was a waiver of any defects in the service of summons, and it would even obviate the necessity of the service of any process at all. The rule is well understood that after a party has filed the general issue to the declaration, and had a full trial of the cause upon its merits, he will not be permitted to say he was not in court.

It is to be observed plaintiff's instructions proceed on the theory a refusal by defendant, or its agents, to furnish ten thousand tons of iron ore to be carried, constituted a breach of the contract. On the other hand, defendant asked the court to instruct the jury, as a matter of law, there was no undertaking on behalf of defendant to furnish plaintiff with ten thousand tons of ore to be carried. By its instructions the court construed the contract as obligating defendant to furnish ten thousand tons of ore to be carried under the contract, and a refusal so to do as a breach of the agreement, and that decision raises the principal question of law to be considered. It is thought the construction given by the court to the contract is the true one. It is readily seen plaintiff was bound by a positive agreement to carry ten thousand tons of ore, under the contract, during the season of 1873. In that respect his undertaking was absolute. The contract provided plaintiff should be "personally responsible" for the delivery at St. Joseph of the whole amount of ore mentioned, "dangers of navigation, fire and collision excepted." As to the undertaking of plaintiff the contract is unambiguous, and can be readily understood. Now, what was defendant obligated to do? It was to "employ" the vessel and to pay the "freights," as mentioned in the contract. What was the vessel to be employed to do? It was to carry ten thousand tons of iron ore, from and to the places mentioned, during the season covered by the contract. What "freights" did the agreement obligate defendant to pay? The answer is plain.

It was the freight on ten thousand tons of ore, "as above mentioned,"—that is, on the ore to be carried during that season from Escanawba and Marquette to St. Joseph, in the vessel "Lotus," or any other standard vessel that might be substituted.    Unless this is the true construction of the contract, plaintiff was under a positive contract, and was "personally responsible," to carry ten thousand tons of ore for defendant, with no corresponding obligation on the part of defendant to furnish the ore to be carried.    Such a contract would have no mutuality at all.    That construction would work a great hardship on plaintiff, and ought not to be adopted unless the contract will bear no other.    It seems quite clear, from a close reading of the contract, it was the intention both parties should be bound.    Plaintiff undertook by his contract to be "personally responsible" to carry the whole ten thousand tons of iron ore for defendant during the season of 1873, and defendant by its contract agreed to "employ" his vessel, the "Lotus," to do that work, and it also agreed to pay the "freights," as mentioned in the contract.

Thus it is seen the covenants are mutual, and of course binding on both parties.    Any other construction would conflict with what seems to have been the clear intention of the parties at the time the contract was entered into.

The case being considered does not come within the principle of *Orr* v. *Ward*, 73 Ill. 318, and other cases cited by counsel for defendant.    In *Orr* v. *Ward* it was thought the contract on which the action for damages was based did not obligate defendants to continue plaintiff in their service for any definite period, and that conclusion was reached by interpreting the contract by what it contained.    On the same principle of construction the conclusion is reached in the case at bar, the covenants are mutual and obligatory on both parties.    There is no analogy between the case of *Orr* v. *Ward* and the case being considered, and the principle of that case, which is still adhered to, has no application.

The point is made the damages found are excessive. Under the previous decisions of this court the amount of damages sustained is a qustion of fact, and one not open to review in this court. The rule is the same whether the damages are found by the court or the verdict of the jury. The mode stated by the trial court, in its instructions, for ascertaining the damages, is thought to be favorable to defendant. It is, that plaintiff, in case a breach of the contract was proven, would be entitled to recover the difference between what he would have earned or made in net profits if the remaining portion of the ore had been delivered for shipment under the contract, and what the vessel "Lotus" earned in other employment during the remainder of the season after notice no more ore would be furnished for transportation. The rule for ascertaining the damages is certainly as favorable to defendant as it could ask to have it stated.

No material error appearing in the record, the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*