## T. W. House v. Alsdorf Faulkner.

(Case No. 1579.)

1. PLEADING.— See statement of case for facts pleaded which were held sufficient to maintain an action to recover for services rendered.

2. CONTRACT.— An instrument of writing was executed by one House for himself and "in behalf of the corporators of the International Railway Company, in which they promised to deliver to the order of Henry B. Andrews five thousand dollars in bonds, to be issued by the state of Texas in aid of that road; the bonds to be delivered as soon as the first instalment thereof should be issued to the directors of the road by the state." In a suit against House on the obligation it was alleged that Andrews had delivered and indorsed the instrument to W. A. Saylor for one Crawford, who, it was alleged, had performed the services for the obligors which constituted the consideration for the bonds, and that Saylor had sold and delivered the instrument for Crawford to the plaintiff. In a suit by plaintiff against the company, which pleaded *non est factum,* and also against House, *held:*

(1) The agreement was not a contract for the sale of bonds, for it bore date two days before the International Railway Company had an existence, and no such contract could be made of a thing having no potential existence.

(2) The agreement contained a promise not absolute, but conditional, to deliver a thing which was not in existence, and which could not necessarily, under any facts and laws then existing, nor under any acts which any of the parties to the agreement could possibly perform, ever have an existence.

(3) The agreement bears internal evidence, when considered with reference to the fact that the company whose bonds were to be delivered had no existence, and that the agreement to deliver was not unconditional, that the parties contracted for the delivery of the bonds only in the event they should be issued.

(4) Whether the instrument was received as *payment* for services rendered was a question of fact. If such was the case, and the absolute right to have the bonds delivered never existed, no right to recover what might have been the value of such bonds, nor right to recover the value of services which may have been the consideration for the conditional promise contained in the instrument sued on, could exist.

(5) If the instrument was *not* taken in payment for such services as may have been rendered, the facts should have been pleaded, showing the true nature of the agreement; and since the bonds were never really issued by the state, the value of the services might have been recovered by a proper party as though the agreement never had been executed; but in such a case it would be necessary *to set forth in what the services consisted*, and the statute would then run from the time when performance of the contract became impossible.

APPEAL from Harris. Tried below before the Hon. James Masterson.

The opinion states the case. The bonds referred to were those to issue under the provisions of a bill which passed two days afterwards through the Texas legislature, chartering the International Railway Company, and providing for a bonus to be given to it by the state in state bonds at the rate of $10,000 for each mile of road to be constructed. It may be stated as matter of public history that the bonds provided for by that act never issued, and that Saylor, who seems to have been an agent of one Crawford, whose given name does not appear, was a member of the state senate when the act passed which authorized the issuance of the bonds.

*E. P. Hill*, for appellant.

*Hutcheson & Carrington*, for appellee, cited: Chitty on Contracts, p. 799, 10th Am. edition; Heard *v.* Bowers. 23 Pick., 460; Ward *v.* Lattimer, 2 Tex., 245; Nash *v.* Towne, 5 Wall., 702; Smethurst *v.* Wolston, 5 Watts & Serg., 109; Neyland *v.* Neyland, 19 Tex., 425–6; R. S., art. 3205; Hillebrant *v.* Burton, 17 Tex., 141; Page *v.* Payne, 41 Tex., 145; Eccles *v.* Daniels, 16 Tex., 141.

Stayton, Associate Justice.— This action is based on the following instrument:

"Austin, Texas, August 3, 1870.

"In consideration of services rendered and of the payment of $1 to us in hand paid, we, the undersigned, for ourselves and in behalf of the corporators of the International Railroad Company, do hereby promise Henry B. Andrews that we will deliver to him or to his order $5,000 in the bonds to be issued in aid of said road by the state of Texas, said bonds to be delivered as soon as the first instalment thereof is issued to the directors of said road by the proper authorities of the state of Texas.       T. W. House."

The petition of Faulkner alleged that the International Railroad Company is "a body corporate by virtue of an act of the legislature of Texas" entitled "An act to incorporate the International Railroad Company and to provide for the aid of the state of Texas in constructing the same," passed August 5, 1870. That said company "has never received the bonds provided for in the above named act of incorporation; that said company, on the 18th day of November, 1873, in the district court of Travis county, Texas, instituted suit against A. Bledsoe, comptroller of the state, in order to compel him to sign and deliver said bonds, and that after said suit had been there decided in favor of said company, the said Bledsoe appealed to the supreme court of the state, and in the early part of the year 1874, about the month of ——, 1874, the supreme court reversed the decision of the court below and dismissed the case,— all of which is reported in the 40th volume of the reports of the supreme court of Texas, published by authority, from page 537 to page 600, inclusive, and which is specially pleaded herein." "That said company afterwards utterly abandoned all claims for bonds against the state of Texas and took and accepted other subsidies therefrom (without consulting with or without the consent of plaintiff), that is evidenced by an act of the legislature of Texas entitled ' An act for the relief of the International Railroad Company, under the name of the International & Great Northern Railroad Company,' approved March 10, 1875, which act is now specially pleaded, and by which said company was to release its claims for state bonds and accept other aid and subsidy." "That said company did in due time accept of said act, according to its provisions, and have enjoyed and are now enjoying the benefits thereof; that plaintiff could not therefore demand the identical bonds mentioned, and by no act of his, but by the acts of said company and the state,— but that state bonds of the state of Texas are and were all along worth par with coupons

clipped up to the time of sale, and state bonds similar to those mentioned in said act of incorporation are and were worth the same."

" That by the execution of said instrument for the purposes stated, and in accordance with the premises,. defendants undertook and promised to pay, and are justly indebted to plaintiff in the sum of $5,000, with interest, and judgment is prayed for said debt, interest and costs, or for any other legal and equitable adjustment as may seem proper."

The petition further avers that the instrument sued on was " executed for a valuable consideration to Henry B. Andrews, to be by him delivered. to one —— Crawford for services and expenses of said Crawford, rendered to the obligors in said bond, and which were reasonably worth and were by them estimated and valued at $5,000, and the said obligation for bonds delivered to him in discharge of said services, and which by the said Henry B. Andrews was delivered and indorsed to W. A. Saylor for the said Crawford, and at the instance and request of the said Crawford the said Saylor sold and delivered the same to petitioner for a valuable consideration before its maturity."

The International Railway Company was made a party defendant, but under a plea of *non est factum* a judgment was rendered in its favor.

The defendant House filed a general demurrer; also a special demurrer which questioned the sufficiency of the petition to authorize a recovery for the value of the services of Crawford.

The court overruled the demurrers, and this ruling is assigned as error.

Waiving all question whether the right to recover for services of Crawford would have passed by the transfer of the instrument sued on, we are of the opinion that the court erred in overruling the demurrer which pointed out the insufficiency of the petition, if intended as an action to recover for services.

The main question in the case, which comes up without a statement of facts, arises upon the action of the court in overruling the appellant's general demurrer.

The correctness of the ruling of the court in this respect depends on the true construction of the instrument sued on.

To construe this instrument we may look not only to the language in which it is written, but also to the surroundings of the parties at the time the contract was made, as we may to the state or condition of the thing contracted to be delivered on the happening of a given event, in so far as the facts necessary to such a consideration of the question are stated in the plaintiff's petition.

From the petition it appears that the instrument in question was executed by T. W. House two days before the International Railroad had an existence. The act incorporating it was passed August 5, 1870, and by and through that act solely, arose any claim which that company ever had to receive bonds issued by the state of Texas in aid of its road.

The parties, then, were contracting in reference to a thing which they knew did not exist; to which the railway company then had not the shadow of right or claim; were contracting for a mere possibility, for a contingency which might happen or not, as the will of the legislature might determine.

It, then, was not a contract of sale of bonds; for no such contract can be made of a thing not having a *potential existence.* Benjamin on Sales, 78.

Does the instrument evidence a valid executory agreement by which the one party became unconditionally bound to deliver to the other the bonds referred to?

If the bonds had been in existence, or if the law which provided for their issue had been in force, and the work contemplated to be done by the railway company to entitle it to bonds under the law had been done, at the time the instrument was executed, there would be much force in the proposition that the fact that the time designated in the instrument for the delivery of the bonds was contingent on certain acts to be performed by the state's officers, would not make the promise contained in the instrument contingent, in a legal sense, as to the right of the holder of the instrument to have the bonds or their value; for there would have then been a clear legal right to the bonds, with reference to which the parties would be presumed to have contracted, and the right being perfect, they could not have contemplated that the proper officers of the state would refuse to issue them.

The promise of the maker of the instrument that the bonds should be delivered was not unconditional, but was coupled with a condition which made the *right* to have the bonds delivered to depend on a contingency, or, rather, in view of the facts stated in the petition, on a series of contingencies, the failure of any one of which would defeat the right. The parties knew, to say the least of it, that the occurrence of those events was doubtful. They knew further that this was a matter which they could not control; which must be taken into consideration with the further fact that at the time the instrument was executed, the thing to which the contract related was non-existent and wholly contingent, and so, notwithstanding, the persons making the contract, or named in it,

might do everything they had power to do. This the parties knew. The laws and facts might exist in the future which would authorize the bonds to issue, or they might not. All was a contingency, a venture it may be, in which all parties were to become interested; the one by his services, it may be, in aiding to bring about a state of facts under which the bonds would be authorized and might issue, to become the owner of such as were designated in the contract, and the other contracting party or parties in some way to be benefited in the common enterprise.

We then have a promise, not absolute but conditional, to deliver a thing not in existence, and which would not necessarily, under facts and laws then existing, nor under any acts which any of the parties to the contract could possibly perform, ever have an existence.

It is not averred that T. W. House was in any way instrumental in preventing the coming of the bonds into the hands of the directory.

The question is: What did the parties intend? Did the one intend to bind himself absolutely, ever to deliver the bonds, and did the other understand him so to bind himself and so contract? If so, this intention must be found evidenced in some way other than by the words used in the instrument or by the surroundings of the parties stated in the petition.

The facts that the thing in reference to which they contracted had no potential existence, coupled with the fact that the promise to deliver is not absolute or unconditional, bear internal evidence that the parties understood and contracted for the delivery of the bonds only in the event they should be issued. That they intended to make the whole matter contingent as to the vesting of absolute right as was the instrument in form.

The contract contemplated the delivery of certain things, and not things merely of the same general kind or class.

The delivery of bonds of like character, if the bonds in question can be said to have had in contemplation of the parties at the time a specific character or description, would not have been a compliance with the agreement. If entitled to bonds, the party to whom they were to be delivered had the right to bonds of a specific kind.

Contracts in reference even to things in existence, under forms of agreement no more conditional than that found in the instrument in question, have frequently been held to have been intended by the parties absolutely binding, only if, and when, the contingency with reference to which the parties contracted actually occurs.

Familiar examples of this class of contracts are to be found in cases in which persons have agreed to sell to others goods to arrive on a named vessel, and like contracts, many of which are collected in Benjamin on Sales, 569–586.

After reviewing the cases, the learned author thus sums up what seems to be the rules applicable to such contracts: "It appears from this review of the decisions that contracts of this character may be classified as follows: First. Where the language is that goods are sold 'on arrival per ship A., or ex-ship A.,' or 'to arrive per ship A., or ex-ship A.' (for these two expressions mean precisely the same thing), it imports a *double condition precedent*, viz., that the ship named shall arrive, *and* that the goods sold shall be on board on her arrival. Secondly. Where the language asserts the goods to be on board of the vessel named, as 'one thousand one hundred and seventy bales *now on passage* and expected to arrive per ship A.,' or other terms of like import, there is a warranty that the goods are on board, and a *single condition precedent*, to wit, the arrival of the vessel. · Thirdly. The condition precedent that the goods shall arrive by the vessel will not be fulfilled by the arrival of goods answering the description of those sold, but not consigned to the vendor, and with which he did not affect to deal; but *semble*, the condition will be fulfilled if the goods which arrive are the same that the vendor intended to sell, in the expectation, which turns out to be unfounded, that they would be consigned to him. Fourthly. Where the sale describes the expected cargo to be of a particular description, as 'four hundred tons of *Aracan Necrusic* rice,' and the cargo turns out, on arrival, to be rice of a different description, the condition precedent is not fulfilled, and neither party is bound by the bargain."

The same rule has been applied to things having a *potential existence*, that is, things which are the natural product or expected increase of something already belonging to the seller, and conditions precedent held to exist, though not expressed in the contract. An example of this kind is found in Howell *v.* Coupland, 1 L. R., Q. B. Div., 255, decided in 1876.

If services were rendered, as the consideration for the agreement, prior to the making of the same, but under an oral agreement looking to manner and terms of payment set out subsequently in the instrument, or if rendered before the execution of the instrument sued on, without any understanding that payment therefor should be made in that way, then, if the instrument was taken in *payment* for such services, that which the person, claiming through it, took,

was but a contingent right to receive bonds described in the instrument, on their face amounting to $5,000; and he took the risk of the future existence of the facts which would give a legal and actual existence of the bonds, and consummate their delivery to the directory of the contemplated railway company.

Whether the instrument was taken as a *payment* for services rendered was largely a question of fact. The inference from the averments of the petition is that the instrument was so taken; if such be the case, it seems hardly necessary to say, if the absolute *right* to have the bonds delivered never existed, that no right to recover what might have been the value of such bonds, nor right to recover the value of services which may have been the consideration for the conditional promise contained in the instrument sued on, could exist.

A person may pay a valuable consideration for the promise of another to do an act on certain conditions precedent, or to convey property, real or personal, on such condition, the fulfilment of which must depend on the acts of other persons, of which neither party to the agreement have any control; yet such a contract may be enforced if the condition on which the act is to be done or conveyance be fulfilled, and the transaction not unlawful; but, in such case, the non-fulfilment of such conditions, and the consequent non-liability of the promisor to do the act or make the conveyance, could not have the effect of vesting in the other party the right to recover the value of the consideration paid for the contract by which he became entitled to the possibility of acquiring an unconditional right.

The inference from the petition is that the state refused to issue the bonds, and that by subsequent laws their issue was practically prohibited, and it becomes unnecessary to consider what effect on the rights of the parties, under all the circumstances of the case, the subsequent passage of such a law would have.

If the instrument was not taken in payment for such services as may have been rendered, the facts should have been set up showing the true nature of the agreement, and if therefrom it was seen that the instrument was not intended to operate a satisfaction of the claim for services, then, when the performance of the contract evidenced by the instrument became impossible of fulfilment, by reason of the facts stated in the petition, suit might have been brought by a proper person to recover the value of the services, as though the instrument had never been executed; but in such case it would be necessary to set out in what the services consisted.

As against such a suit, which this is not, the statutes of limitation would run from the time the performance of the contract sued on became impracticable.

For the error of the court below in overruling the appellant's demurrer the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 18, 1884.]