**MISSOURI, K. & T. RY. CO. OF TEXAS et al. v. STATE. (No. 6857.)***

(Court of Civil Appeals of Texas. Austin. June 24, 1925. Rehearing Denied Oct. 7, 1925.)

**1. Railroads ⬅46 — Maintenance of division superintendent's and train dispatcher's office held within agreement to maintain "shop facilities" and "terminals."**

Agreement of railroad to maintain "shop facilities" and "terminals" at point in question, considered in its entirety, *held* to require maintenance and operation of division superintendent's and train dispatcher's office; "terminal" of railroad meaning end or terminus of road, and, as applied to divisional terminal, includes superintendent's and train dispatcher's office, whereas "shop facilities" includes offices, furniture, fixtures, equipment, appliances, or instrumentalities used in operation of office by railroad in conduct of its business.

[Ed. Note.—For other definitions, see Words and Phrases, Terminals.]

**2. Compromise and settlement ⬅11—Judgment ⬅91—A compromise or agreed judgment is interpreted like contract.**

A compromise or agreed judgment is interpreted as if it were a contract between the parties.

**3. Contracts ⬅143, 169—Entire instrument construed in light of whole; terms construed in light of surrounding circumstances.**

A contract and the meaning of terms therein will be construed in the light of the whole, and, when the language and subject-matter are doubtful, they must be construed in the light of surrounding circumstances.

**4. Railroads ⬅194(3)—Compromise judgment requiring maintenance of shop facilities and terminals held "covenant," binding on purchasers.**

A compromise judgment, requiring railroad to maintain shop facilities and terminals at described point, *held* in nature of a covenant running with the title to properties and franchises and therefore binding on purchaser at judgment sale, which acquired right to operate under Const. art. 10, § 1, and by virtue of Rev. St. 1911, arts. 6624, 6625, especially where accepting benefits from agreed judgment; a "covenant" being promise of parties to written instrument to do or not to do some particular thing.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Covenant.]

**5. Railroads ⬅18—Possess only powers conferred by charter.**

Railroads are regulated and restricted by fundamental law, aided by statutory enactments and right to engage in business within state as authorized by charter, possessing only those powers conferred by charter, either expressly or incidental to its very existence, and reasonable doubt will be resolved adversely to railroad.

**6. Railroads ⬅194(3) — Purchaser charged with notice of instruments in chain of title.**

Corporation purchasing property and franchise of railroad at judicial sale is charged with notice of instruments in its chain of title.

**7. Railroads ⬅194(3)—Purchaser estopped to deny agreement judgment of predecessor with state.**

Corporation, which has purchased franchises and properties of railroad at judicial sale, is estopped to deny agreement judgment made between predecessor and state, and of which it had notice, in view of policy of state supervision of right to own and operate railroads and the particular use of the properties and franchises under terms of agreement, with valuable rights acquired, as well as change of position of state.

**8. Courts ⬅493(3)—State court's jurisdiction to determine questions of unlawful consolidation of railroads not ousted by foreclosure proceedings in federal court.**

Where action had been commenced by state against railroads, involving questions of unlawful consolidation, subsequent foreclosure proceedings in federal court, to which state was not a party, *held* not to oust state court's jurisdiction to determine questions before it, and agreement judgment entered therein was not invalidated.

**9. Railroads ⬅57—Must prove requirement too burdensome by clear evidence.**

In attempt to show that terms and obligations of agreement and judgment requiring railroad to maintain shop facilities and terminals at particular place have become an undue burden upon interstate and intrastate commerce, railroad has burden of showing by clear and satisfactory evidence that it cannot perform duties owing to public with proper discharge of their reasonable effort.

**10. Commerce ⬅58—Agreement and judgment requiring maintenance of shop facilities and terminals held not undue burden.**

Agreement and judgment between railroad and state, requiring maintenance of certain shop facilities and terminals, which required extra expenditure of $21,000 annually, *held* not an undue burden on interstate commerce under evidence, within prohibition of federal Transportation Act of 1920 (U. S. Comp. St. Ann. Supp. 1923, § 10071¼ et seq.), especially where agreement provided that discontinuance or removal might be authorized by Railroad Commission, and no application had been made therefor.

**11. Railroads ⬅9(2)—Orders and regulations of Railroad Commission subject to review.**

Railroad Commission of Texas has control of operation of railroads within state in every aspect, with power to hear and determine all subject-matter of railroad regulation, and its orders, rules, and regulations are subject to review by the courts as to reasonableness and justice, in view of Rev. St. 1911, art. 6657.

Appeal from District Court, Travis County; George Calhoun, Judge.

Proceeding by the State of Texas against the Missouri, Kansas & Texas Railway Company of Texas and others. Judgment for plaintiff, and defendant named appeals. Affirmed.

Batts & Brooks, of Austin, Charles C. Huff, of Dallas, and Joseph M. Bryson, of St. Louis, Mo., for appellant.

Dan Moody, Atty. Gen., and Ernest May, Asst. Atty. Gen., P. J. Alexander and S. L. Staples, both of Smithville, and Bailey, Nickels & Bailey, of Dallas, for the State.

BLAIR, J. March 4, 1913, the state of Texas sued the Missouri, Kansas & Texas Railway Company of Texas, Missouri, Kansas & Texas Railway Company, and eight other railroad corporations, in the district court of Travis county, to restrain and enjoin them from consummating a consolidation purported to be authorized by chapter 11, Acts Thirty-Third Legislature; also to recover penalties for violations of the anti-trust, general railway office, and other statutes governing the operations of railroads.

February 4, 1914, the parties compromised the suit, and the written agreement was approved and entered as the judgment of the court February 6, 1914. The paragraphs of the agreement and judgment material here read:

"(30) The shop facilities and terminals of the Missouri, Kansas & Texas Railway Company of Texas at Smithville, Tex., shall be maintained substantially as they existed on the 25th day of January, A. D. 1913, and shall not be removed therefrom until such removal is authorized by the Railroad Commission of Texas. It is provided, however, that nothing in this agreement shall affect any contract which may exist or may have heretofore existed between the city of Smithville or any citizen or citizens of that city or of that community, or of any other parties, and the Missouri, Kansas & Texas Railway Company of Texas with reference to the maintenance of said shops, facilities, and terminals at said point, if any such contracts exist; but it is expressly provided that this stipulation is not a recognition by any of the parties thereto of the existence of any such a contract, but this particular stipulation is simply incorporated in the agreement in order that it may be understood that it is not the purpose of the Attorney General to undertake to bind any one upon any obligation with reference thereto not embraced within this agreement of this litigation."

"(18) This judgment and decree is final as to all the parties and issues involved in the suit, but any party to this cause may make application to the court at any time for such further orders and directions as may be necessary and proper in relation to carrying out the provisions of this decree and the said agreement. Jurisdiction is retained by the court for the purpose only of giving full effect to this decree, by such other and further orders as may be necessary or appropriate to carry out and enforce the provisions of the agreement and this decree entered thereon."

The state of Texas filed a motion October 6, 1923, to correct paragraph 30, supra, so as to read:

"The shops, facilities, and terminals of the Missouri-Kansas-Texas Railway Company of Texas at Smithville, Tex., shall be maintained substantially as they existed on the 25th day of January, A. D. 1913, and shall not be removed therefrom until such removal is authorized by the Railroad Commission of Texas," etc.

Appellant contested the motion, and it was denied. The state instituted this proceeding in that cause July 7, 1923, against appellant, Missouri-Kansas-Texas Railroad Company of Texas, and various other railroad companies, in the nature of an application for writs of mandamus and mandatory injunction seeking to compel especially the Missouri-Kansas-Texas Railroad Company of Texas, to maintain and operate at Smithville, Tex., all offices and equipment, office forces, shops, terminals, and other forces and facilities in quantities and numbers as were there maintained and operated on January 25, 1913; also that said railroad company be "required to re-establish at Smithville, Tex., its division superintendent's and train dispatcher's offices, and to maintain the same substantially as the Missouri, Kansas & Texas Railway Company of Texas, maintained same on January 25, 1913," alleging that the appellant, Missouri-Kansas-Texas Railroad Company of Texas, owns and operates certain lines of railroad, including the line from Waco through Smithville to Houston; that it is the successor in interest of all the physical properties and franchises of the defendant railroad companies, parties to said agreement and judgment of February 4 and 6, 1914, respectively, and in and to the interest of the successors of the defendants in that suit to the physical properties and franchises; that the agreement and judgment, their terms and obligations, were mutually intended to be, and in fact and law were to become and to remain, attached to the physical properties and franchises of the defendants to that suit and their successors in interest, and to become a covenant attached to and running with the title to said physical properties and franchises, and especially to the line of railroad specifically named; that in violation of said agreement, judgment, and covenant the appellant railroad company is refusing to maintain shop facilities and terminals as provided by the agreement, and is not maintaining or operating substantially as they existed at Smithville, Tex., January 25, 1913, the offices of division superintendent and train dispatcher, nor the office equipment and force belonging and appertaining thereto, but have closed, abandoned, or removed them without any order or authority of the Railroad Commission of Texas, in breach of the agreement and judgment aforesaid.

The appellant railroad company answered by formal answer, and specially pleaded under oath that it was incorporated under the laws of Texas, January 24, 1923, and began to operate the line of railroad in question April 1, 1923, which was formerly the property of the Missouri, Kansas & Texas Railway Company of Texas, having purchased it at judicial sales, and, since it was in no way a party to the agreement and judgment, could not be bound thereby; that neither contained any stipulation to the effect that purchasers of the property at judicial sale should be bound thereby; that they were neither a part of or attached to the physical properties and franchises of the original parties at the suit, nor did they become a covenant attached to or running with the title; but that said agreement and judgment were personal obligations of its predecessors and not binding upon it.

It was further specially pleaded that the agreement and judgment did not require the old company or its successor to maintain and operate the offices of superintendent and train dispatcher at Smithville, Tex., but only required it to maintain and operate "shop facilities and terminals," which it was doing.

It was further pleaded that appellant railroad company did not purchase 349.59 miles of the road operated by the old railroad, and that it had expended large sums of money in the improvement of its equipment, all of which rendered it unnecessary to maintain the offices and equipment in question at Smithville, and that these changes were made in the interest of public policy and economy, and, since it was a common carrier of freight and passengers, engaged in both interstate and intrastate commerce, and since the closing of the particular offices named resulted in a net saving of $21,000 plus annually, it should be declared, if the stipulation in the agreement and judgment in this respect were ever binding upon it, that same now constitutes and requires an undue, unreasonable, and unjust discrimination against both interstate and intrastate commerce, and therefore violative of the Transportation Act of 1920 (U. S. Comp. St. Ann. Supp. 1923, § 10071¼ et seq.) and public policy. Appellant further pleaded that it had the right to have the matter here involved adjudicated in the federal court at the foot of the decree in the foreclosure proceedings under which it purchased the properties.

By supplemental motion, the state generally denied the allegations of appellant railroad company, and specially pleaded that it purchased the physical properties and franchises under the foreclosure proceeding with full notice of the agreement and judgment entered in the cause against its predecessors February 6, 1914; that it derived and enjoyed substantial rights and advantages accruing by virtue of the agreement and judgment, and is therefore estopped to defend this proceeding on the ground that it was not a party to and had no notice of the agreement and judgment.

Upon the issues thus raised by the pleadings, the case was tried to the court, a jury being waived, and judgment was rendered against the Missouri-Kansas-Texas Railroad Company of Texas, decreeing that it was bound by the agreement and judgment to maintain certain shop facilities and terminals at Smithville, Tex., substantially as they were maintained there by the Missouri, Kansas & Texas Railway Company of Texas, January 25, 1913, and ordered that they be so maintained; and further decreed that appellant, Missouri-Kansas-Texas Railroad Company of Texas be "required to re-establish at Smithville, Tex., its division superintendent's and train dispatcher's offices, and to maintain the same substantially as the Missouri, Kansas & Texas Railway Company of Texas maintained same on January 25, 1913."

The appellant was given 60 days to comply with the judgment or to supersede it in case of an appeal. The appeal was perfected by supersedeas bond in the sum required by the judgment.

[1] Logically, the first question to determine is whether the compromise agreement and judgment of February 4–6, 1914, respectively, directed the Missouri, Kansas & Texas Railway Company of Texas, to maintain and operate its division superintendent's and train dispatcher's office, etc., at Smithville, Tex. We have concluded that it was so directed.

[2, 3] The agreement of February 4, 1914, was reduced to writing and constituted the basis for the judgment of February 6, 1914. The stipulation sought to be enforced here is found in both the agreement and the judgment. A compromise or agreed judgment is to be interpreted as if it were a contract between the parties. Prince v. Frost-Johnson Lbr. Co. (Tex. Civ. App.) 250 S. W. 785; Cannon v. Hemphill, 7 Tex. 184. Appellant Railway Company contends that paragraph 30 of the agreement only required its predecessor to maintain "shop facilities and terminals" as expressed in the first line and sentence of said paragraph, and that such language could in no way be interpreted to mean or to require it to maintain and operate the offices of division superintendent and train dispatcher at Smithville. In another portion of the paragraph this language is used, "with reference to the maintainance of said shops, facilities, and terminals at said point." The railroad contends that the parties intended to contract for only two things, "shop facilities" and "terminals." The Attorney General contends that three things were contracted for, "shops," "facilities," and "terminals." A primary rule of construction is

that the entire instrument must be considered and construed in the light of the whole. Hearne v. Gillett, 62 Tex. 26; Moore v. Waco, 85 Tex. 211, 20 S. W. 61; Green County v. Quinlan, 211 U. S. 582, 29 S. Ct. 162, 53 L. Ed. 335. Another familiar rule of construction is that, when the language and subject-matter are doubtful, they must be construed in the light of the surrounding circumstances. Tittle v. Vanleer, 89 Tex. 192, 34 S. W. 715, 37 L. R. A. 337; Smith v. Brown, 66 Tex. 545, 1 S. W. 573; House v. Faulkner, 61 Tex. 311; United States v. Peck, 102 U. S. 65, 25 L. Ed. 46. The law furnishes these rules for the purpose of ascertaining from all the language used and the surrounding circumstances the manner and extent to which the parties intended to be bound; the main purpose being to reach the probable intent of the parties. With these rules is also one that the practical construction placed upon the contract by the parties thereto will be given considerable weight in ascertaining the true meaning and intent of the contract. It is undisputed that the offices of division superintend and train dispatcher were maintained at Smithville on January 25, 1913, and for many years prior thereto. It is also undisputed that appellant's predecessors maintained such offices continuously thereafter, until appellant closed them some time in 1923 after it had purchased the property. So, in view of these facts and the rules stated, we think it was the intention of the state of Texas and the defendants to that suit to bind themselves and especially the Missouri, Kansas & Texas Railway Company of Texas to maintain whatever "shop facilities and terminals," or whatever "shops, facilities, and terminals" it then had or maintained at Smithville, Tex., on January 25, 1913, in accordance with the meaning of those terms as they related to the particular time and business and under the circumstances then surrounding the parties, until such time as it might be authorized to remove them by the Railroad Commission of Texas.

If the paragraph be construed as containing only the language, "the shop facilities and terminals of the Missouri, Kansas' & Texas Railway Company of Texas, at Smithville, Tex., shall be maintained as they existed on the 25th day of January, A. D. 1913, shall not be removed therefrom until such removal is authorized by the Railroad Commission of Texas," it is sufficient, under the facts and surrounding circumstances attending the execution of the agreement and the rules of construction announced here, to bind the contracting railroads to maintain the offices of division superintendent and train dispatcher as there maintained January 25, 1913. The terms "shop facilities" and "terminals" are used in the agreement in a broader sense than their ordinary meaning, since they are the general terms by which the contracting parties intended to include all offices, forces, means, equipment, facilities, etc., necessary to carry on and maintain the shops and terminals as they then and there existed, without specifically naming each thing to be maintained. The "shop facilities" would be useless without the shops, and was meant to include the shops as then maintained.

The word "terminal" means ordinarily the boundary limit or end of something. When pertaining to a railroad, it has the general meaning of the end or terminus of the road. Smithville is not the end or terminus of the line of railroad in the sense that it extends no farther; but it is a divisional terminal in the sense that they maintain there shops, facilities, and other things designated "terminals" in connection with and as a part of the railroad business. No other language is used in connection with the words "shop facilities and terminals" which in any way qualifies or limits their broad meaning as intending to define and describe all things to be done and properties to be there maintained without specifically naming them. A superintendent's or train dispatcher's office may not be of necessity a part of a divisional terminal of a railroad; still, if such offices are maintained and operated at a place designated by the railroad as its "terminals," they may be considered and are in fact a part of such divisional terminals. In other words, the parties to this contract meant to use the word "terminals" so as to include every means, force, facility, or power used by it at Smithville at that time in the operation of the general railroad business, without having to define or describe them particularly. What other meaning could the word have? Able counsel drew the contract and used the general terms for a definite purpose. To construe it not to be all-inclusive would certainly render the subject-matter of the contract doubtful, to the extent that there is no rule or guide to determine just what things were being done there at the time which could be dispensed with without violating the contract, or what property could be moved without a like violation of the contract. When the word is construed to include all things being done and all properties being then maintained and operated at the time, and in the light of the fact that the parties knew these offices were and had been for many years there maintained and operated, no other reasonable conclusion can be reached but that those railroads bound themselves to continue their operation as of the date named.

If the word "terminals," as used in the agreement and judgment, be construed to mean facilities, etc., which we think it does, then the use of the other language, "with reference to shops, facilities, and terminals," as elsewhere used in that paragraph, really adds nothing to it. We think, however, that

by the use of this language it is clear that the parties intended to and did contract with reference to "shops, facilities, and terminals," and that the word "facilities" was not used in a technical sense, but intended to be used in the same sense as ordinarily defined. The Century Dictionary defines it as follows:

"The means by which the performance of anything is rendered more easy; 'convenience.' That which aids, assists, or makes more easy the acquisition of knowledge is a convenience and an advantage, and is clearly a 'facility.' Books, maps, globes, and charts are facilities to the imparting of knowledge. Through them or by means of them information is conveyed to the pupil. But the meaning of the word is not limited to inanimate bodies or things. Men are often facilities. Without a crew to man his vessel, the master of a ship would not have the necessary facilities. A school with a compliment of pupils in every room, but lacking teachers, would certainly not have the facilities to carry on educational work."

This definition is reviewed, and the term "facilities" generally discussed in State ex rel. Knight v. Cave, 20 Mont. 468, 52 P. 200; State v. Johnson, 20 Mont. 367, 51 P. 820.

The appellant is a railroad corporation. It is without power to conceive and effectuate any purpose except as the men and women who constitute, in legal terms, its employees conceive and execute purposes in its name. Men and women are to that extent the facilities through and by which the corporate entity acts. An office of wood, brick, or other material used by a railroad in the operation of its business is a facility of the railroad. The furniture and fixtures and equipment as well as the other appliances or instrumentalities used in the operation of an office by a railroad in the conduct of its business are facilities. Appellant railroad admits that offices for a division superintendent and train dispatcher were maintained at Smithville January 25, 1913, and many years prior thereto, and were continued to be so operated until 1923, when it closed or consolidated the offices, and removed or discharged the employees of those offices, some 18 or 20 in number. We therefore conclude that appellant railroad is not maintaining these facilities as they were maintained January 25, 1913, which its predecessors in title contracted to maintain.

[4] The next question is whether appellant, the new corporation, is obligated to perform the agreement and judgment by reason of its purchase of the properties and franchises of the sold-out corporation at judicial sale. It contends not, either by contract or law, urging that it was not in existence when they were made and entered into, and could not be a party to them. The state insists that the terms and obligations imposed by them became a charge upon and a covenant, running with the title to the properties and franchises with which they dealt, and for that reason binding upon appellant as the purchaser of these interests. It is also urged that appellant railroad accepted their benefits, etc., with notice of their terms and obligations, and is thereby estopped to refuse their performance. We sustain the view of the state.

[5] The record discloses that appellant railroad acquired its right to form a corporation and secure the physical properties and franchises, together with right to operate the railroads in question under the provisions of section 1, art. 10, of the state Constitution and by virtue of articles 6624 and 6625, R. S. 1911. As a matter of public policy, this state has from the earliest time required railroad corporations to secure franchises as a prerequisite to engage in the railroad business, and sovereignty through its fundamental law imposed certain conditions and restrictions upon this grant of power. The Legislature, in aid of the Constitution, has from time to time also placed other conditions and requirements, which it thought just and proper, upon the right to engage in the railroad business within this state; that is, the right to own and operate a railroad in Texas is by franchise having its source of authority in the Constitution and statutory law. A railroad corporation "possesses only those powers which the charter confers upon it, either expressly or as incidental to its very existence," and "every reasonable doubt is to be resolved adversely" against the corporation under the rule of construction applied in this class of cases by most courts as being "vital to the public welfare." Dartmouth College Case, 4 Wheat. 518, 4 L. Ed. 629; Fertilizer Co. v. Hyde Park, 97 U. S. 659, 24 L. Ed. 1036.

"Whatever powers that law authorizes to be conferred upon them, through their charters, they had, and they had no more and no less; this, of course, carrying such incidental powers, not enumerated, as were necessary to enable them to exercise properly the powers expressly granted." Railway Co. v. Morris, 67 Tex. 692, 4 S. W. 156.

The form or language of the charter or franchise is not of essential importance, since it can grant no power not authorized by basic law. Railway Co. v. Railway Co., 68 Tex. 176, 4 S. W. 534; Irrigation Co. v. Vivian, 74 Tex. 173, 11 S. W. 1078; Tram Co. v. Bancroft, 16 Tex. Civ. App. 170, 40 S. W. 839; Ry. Co. v. Worthington, 88 Tex. 562, 30 S. W. 1055, 53 Am. St. Rep. 778. So it was only by a compliance with the terms and conditions of article 6625, R. S. 1911, that appellant railroad was authorized to form the corporation in this case and to become the purchaser of the physical properties and franchises of the sold-out corporations as consolidated by the agreement and judgment in question, including those of the Missouri, Kansas & Texas Railway Company of Texas.

A compliance with this article breathed into it its very life and existence. By that article the "properties and franchises" were secured. No new franchises or charters were issued, but its compliance with the statute secured a legal transfer to it of the properties and franchises of the sold-out corporations. These properties and franchises of sold-out corporations are dealt with conjunctively by these statutes, and title thereto passes conjunctively, charged with and subject to the payment of the liabilities there named. These rights and powers granted by the state are valuable to the recipient, and also represent a sacrifice by the state. They confer benefits, etc., that cannot be otherwise obtained, and fairness and equity require those receiving them to also assume the burdens imposed, whether that be by contract or law. In the case of Railway Co. v. Anderson Co., 106 Tex. 60, 156 S. W. 499, it is said, in respect to this question:

"It must be remembered that the relation of the plaintiff in error to this railroad is not that sustained by a company to a railroad which has been constructed under its own charter, or which is unaffected by previous statutory or charter obligations. Its corporate life issues from the ownership of the franchise and property of a former railroad company, since article 6625 conferred upon its incorporators the right of incorporation only in virtue of such ownership. The rights which it possesses and is permitted to exercise in respect to the railroad are founded upon that franchise. It sustains its right of ownership of the property. The plaintiff in error could not succeed to the property without it, since neither is alienable except by statutory consent, and under our statutes one may not be acquired without the other. Sustaining this vital and inseparable relation to the railroad and the title by which it is now held, the plaintiff in error, in our opinion, could not acquire the franchise, and may not exercise the rights in the property which result from its ownership, freed from the limitations to which it was subject in the hands of the former company."

In the instant case appellant's predecessor, or predecessors, made the agreement and suffered the judgment in consideration of the state's waiving its claim for certain penalties and forfeitures, and permitting the consolidation. Back of and beyond this the state evidently had at least a disputed claim of right to compel the sold-out corporation named to maintain and operate "shop facilities and terminals" at Smithville, Tex., for the right was recognized and adjusted by the agreement and judgment. They dealt specifically and directly with the properties and franchises of the contracting railroads, and forfeitures of the latter waived. Fines and penalties were waived, which if imposed would have charged the properties with their payment. The contracting railroads received additional rights and powers because the state suffered the consolidation. They un-

dertook to maintain certain named "shop facilities and terminals," to wit, those then owned and maintained by the Missouri, Kansas & Texas Railway Company of Texas, at Smithville, Tex. They agreed never to remove them, except as therein provided, and further that they "shall be maintained substantially as they existed on the 25th day of January, A. D. 1913." The agreement thus made was between competent parties. The judgment based thereon was a final one by a court of competent jurisdiction with the parties and subject-matter of the suit properly before it. Both of them operated directly upon and against the properties and franchises and the things to be done in connection therewith, for by them the status, as to location, mode of operation, and the time for continuation thereof, were expressly fixed. As we construe the agreement and judgment, a removal of the specific properties and franchises was prohibited forever, unless authorized by the Railroad Commission of Texas. No such authority has been asked for or granted so far as the record here discloses. Aside from the record notice of the agreement and judgment, appellant railroad had actual notice of them immediately before its purchases of the properties and franchises in question at the judicial sale. Under this state of facts we think, without question, that the terms and obligations of the agreement and judgment became, in fact and law, a charge upon and a covenant attached to and running with the physical properties and franchises of the sold-out corporations, and especially to the one specifically named, and that appellant, by reason of its purchase as aforesaid, took the properties and franchises subject to, and in fact and law charged with, the performance of these terms and obligations.

Such far-reaching transactions were not mere personal obligations on the part of the sold-out corporation, but constituted the terms and conditions and the solemn promises of the railroad corporation to the state whereby they obtained and secured to themselves many valuable rights including that of life itself, and which so touch and concern the properties and franchises dealt with that their benefit and obligation alike pass with the ownership thereof.

A covenant is the term applied to any agreement. It is the obligation or promise of one party to a written instrument to the other party to do or not to do some particular thing. Any words that amount to or import an agreement are sufficient to constitute a covenant. 15 C. J. 1209. Like other contracts, the intention of the parties is the thing sought to be ascertained from the written instrument.

"All covenants are either real or personal. Those so closely connected with the realty that their benefit or burden passes with the realty are construed to be real covenants; all others are personal." 15 C. J. 1220.

In the case before us, neither the properties nor franchises of the sold-out corporations could be transferred without the consent of the state. Railway Co. v. Anderson Co., supra. Article 6625, supra, requires the purchaser to acquire both the properties and franchises as one single and inseparable transaction, which was spoken of in the above case as the "vital and inseparable relation" of the properties and franchises. Since the properties and franchises are inseparable and pass by the same conveyance, we think that both the benefits and burdens imposed upon them prior to their transfer pass alike with the conveyance. It is well settled that a purchaser of the property and, franchise of a railroad corporation under judicial sale succeeds to all its common-law and statutory duties and obligations to the public. Railway Co. v. Morris, 68 Tex. 49, 3 S. W. 457. Article 6625 requires that the purchaser assume and discharge certain named duties and obligations. The idea which seems to be expressed in the above case must of necessity include any and all duties and obligations imposed upon or attached to the property and franchise prior to its transfer, though not specifically enumerated in the article of the statute mentioned. This is in keeping with the general policy of supervision of railroads by the state. If the statutory and common-law duties and obligations inhere in and. attach to the property and franchises of a railroad corporation so as to pass with the title to the purchaser, then what good reason can be given why the solemn contracts and promises of the selling corporation concerning the mode, time, and place it was to enjoy and use them, under grant of sovereignty, should not in like manner inhere in and attach to them in the hands of the purchaser. The consolidating railroads contracted and undertook, in consideration of numerous rights and powers granted them, and the waiving of penalties and forfeitures by the state, to maintain forever, unless otherwise ordered by the Railroad Commission, certain "shop facilities and terminals of the Missouri, Kansas & Texas Railway Company of Texas, at. Smithville, Tex." We think the contract and judgment clearly express the intention of the parties to the effect that these undertakings and obligations on the part of these consolidating railroads were to be impressed upon and attached to the properties and franchises so passing to them. The nature of the things to be done, the period of their continuation, the manner and standard by which their maintenance and operation were to be measured, the relation of the things to be done to the properties and franchises affected thereby are about as definite as language can make them, showing a clear intention to impress the properties and franchises and the very right to operate and use them with the particular things to be done. The right to use and operate the properties and franchises depended upon their being operated at a certain place, in a certain way, and for a certain period of time. This fulfills the most rigid definition of a covenant running with or attached to property. See 7 R. C. L. 1102.

In Railway Co. v. Smith, 72 Tex. 122, 9 S. W. 865, 2 L. R. A. 281, the Supreme Court quoted with approval the following from Spencer's Case, 3 Coke, 31:

"When the covenant extends to a thing in esse, part of the demise, the thing to be done by force of the covenant, is annexed and appurtenant to the thing demised, and shall go with the land and bind the assignee though he be not bound by express words."

The agreement and judgment had to do with things in being (properties and franchises, and their consolidation, time, place, and standard of operation) to the extent that they became annexed and appurtenant to them and pass with the title thereto. In fact, the appellant railroad must rely upon the agreement and judgment as a necessary link in its chain of title. No new charters were issued the consolidating railroads, but their titles, rights, and powers in the premises came as a direct result of the agreement and judgment with the state. Appellant by its purchase at judicial sale gained no greater title than the agreement and judgment passed to its predecessors. It accepted this title with all the benefits annexed and appurtenant, and surely fairness and equity will make it perform the obligations annexed and appurtenant thereto. See Railway Co. v. Carter, 95 Tex. 461, 68 S. W. 159; Bangor Furnace Co. v. Magill, 108 Ill. 656; Lewis v. Ins. Co., 61 Mo. 534.

[6] The equitable principles of estoppel also apply to this case, and require the appellant railroad to perform the specific obligations of the agreement and judgment at issue. There is no question but that its claims of title and the right to own and operate the railroads in question are by virtue of them. It is certainly charged with notice of the instruments constituting a link in the chain of its title. The authority, 10 Ruling Case Law, 681, 689, 694, announces these rules:

"A person cannot claim under an instrument without confirming it. He must found his claim on the whole, and cannot adopt that feature or operation which makes in his favor, and at the same time repudiate or contradict another which is counter or adverse to it."

"It would be useless, therefore, and likewise ill-advised, to set forth the various attempted definitions, or to endeavor to evolve therefrom any test sufficiently comprehensive to cover all cases that may arise. The cases themselves must be looked to and applied by way of analogy rather than rule. The following, however, may be ventured as the sum of all the cases: That

a person is held to a representation made or position assumed, where otherwise inequitable consequences would result to another who, having the right to do so under all the circumstances of the case, has, in good faith relied thereon."

"The doctrine of equitable estoppel is frequently applied to transactions in which it is found that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced or of which he has accepted any benefit. * * * And so also the acceptance of any benefit from a transaction or contract, with knowledge or notice of the facts and rights, will create an estoppel."

In Whitney v. Railway Co., 11 Gray (Mass.) 359, 71 Am. Dec. 715, it is held:

"To what extent and in what cases are such stipulations binding on those who take the estate under the grantee, directly or by a derivative title? Upon this point, the better opinion would seem to be that such agreements are valid, and capable of being enforced in equity against all those who take the estate with notice of them, although they may not be strictly speaking real covenants, so as to run with the land, or of a nature to create a technical qualification of the title conveyed by the deed. * * * In this view, the precise form or nature of the covenant or agreement is quite immaterial. It is not essential that it should run with the land. A personal covenant or agreement will be held valid and binding in equity on a purchaser taking the estate with notice. It is not binding on him merely because he stands as an assignee of the party who made the agreement, but because he has taken the estate with notice of a valid agreement concerning it, which he cannot equitably refuse to perform. Sug. Vend. (11th Ed.) 734–743; Bedford v. British Museum, 2 Myl. & K. 552; Bristow v. Wood, 1 Collyer, 480; Whatman v. Gibson, 9 Sim. 196; Schreiber v. Creed, 10 Sim. 9; Barrow v. Richard, 8 Paige [N. Y.] 356, 360 [35 Am. Dec. 713]."

In Parker v. Nightingale, 6 Allen (Mass.) 341, 83 Am. Dec. 632, it is held:

"A court of chancery will recognize and enforce agreements concerning the occupation and mode of use of real estate, although they are not expressed with technical accuracy, as exceptions or reservations out of a grant not binding as covenants real running with the land. Nor is it at all material that such stipulations should be binding at law, or that any privity of estate should subsist between parties in order to render them obligatory, and to warrant equitable relief in case of their infraction. * * * Mann v. Stephens, 15 Sim. 377; Tulk v. Moxhay, 11 Beav. 571, and 2 Phillips R. 774, and 1 Hall & Twells, 105; Patching v. Dubbins, Kay, 1; Coles v. Sims, 5 De G. Macn. & Gord. 1, and 1 Kay, 56; Piggott v. Stratton, De G., Fisher & Jones, 33."

[7] There is reason that every specie of estoppel should apply here. The peculiar nature of the properties dealt with, the policy of state supervision of the right to own and operate properties of this character, the purchase with notice of the terms and obligations of the agreement and judgment, the particular use of the properties and franchises under the terms of the agreement and judgment, the valuable rights acquired by them, and the state suffering a change of position thereby, require that all principles of estoppel and estoppel in pais be here applied.

Several other assignments of error are presented by appellant, some of which become immaterial or harmless, if error, under our holding on the two questions heretofore discussed, and, after careful consideration, we think the others should be overruled. Only two of them merit discussion, which are the propositions that the state court's jurisdiction to determine the matters and things here adjudicated was ousted by the foreclosure in the federal court under which appellant purchased the properties and franchises in question, and that the enforcement of the terms and obligations of the agreement and judgment in the respect here determined constituted an undue burden upon interstate and intrastate commerce and are prohibited by the federal Transportation Act of 1920 and public policy.

[8] The state court acquired jurisdiction of the properties and franchises and the things to be done appertaining thereto prior to February 6, 1914, and this proceeding is an ancillary proceeding in that suit. Since that time the jurisdiction of the state court has been continuous with respect to the matters and things here litigated. The judgment of the state court was some 8 years before the foreclosure decree in the federal court, which was entered July 3, 1922. It is a well-settled policy of courts of concurrent jurisdiction, to recognize the jurisdiction of the court first acquiring jurisdiction. Railway Co. v. Adelbert College, 208 U. S. 38, 28 S. Ct. 182, 52 L. Ed. 379; Julian v. Central Trust Co., 193 U. S. 93, 24 S. Ct. 399, 48 L. Ed. 629. This is the underlying principle and the distinguishing feature of all the cases cited by appellant in support of its proposition.

A complete answer to the jurisdiction question is found, we think, in the case of Railway Co. v. Anderson County, 106 Tex. 60, 156 S. W. 499, and Id., 246 U. S. 424, 38 S. Ct. 372, 62 L. Ed. 807, in which the latter court had this to say:

"But a decree of foreclosure does not render the purchaser and property foreclosed sacrosanct. * * * Shields v. Coleman, 157 U. S. 168, 178, 179, 39 L. Ed. 660, 663, 664, 15 Sup. Ct. Rep. 570; Wabash R. Co. v. Adelbert College, 208 U. S. 38, 55, 52 L. Ed. 379, 386, 28 Sup. Ct. Rep. 182. Even if it were true that the foreclosure sale and order carried an immunity from the present demand that the railway was entitled to set up, in the absence of action on the part of the court of the United States, it would not take away the power of the state court to decide as to the existence of an alleged public duty on the part of a railroad within the territory where the court sat. Ri-

caud v. American Metal Co. (March 11, 1918) 246 U. S. 304 [62 L. Ed.] 733, 38 S. Ct. 312 [62 L. Ed. 733]."

It is true that the foreclosure decree contained the usual stipulations found in such decrees that all questions not disposed of as to enforcement of the judgment might be adjudicated at the foot of the decree. It also authorized the purchaser to adopt, continue in force, or refuse to adopt or continue in force, certain named things at its election. It is also true that appellant filed in that cause its written election not to perform the obligations imposed by the agreement and judgment of February 6, 1914, by the state court, but nothing further than filing was done in respect to it.

The state was in no way made a party to that proceeding. No contention is made that it is bound by the foreclosure decree as a party thereto. Such procedure would violate the fundamental law of both state and nation against taking property without due process of law. So we are of the opinion that a federal court, in a proceeding which is ex parte so far as the state is concerned, and to which it had in no way been made a party, has no power to destroy or impair the obligations of a valid agreement and judgment to which the state is a party, concerning properties and franchises of railroads against which the state by the agreement and judgment imposed and attached certain obligations.

[9, 10] On the fact issue that the terms and obligations of the agreement and judgment had become an undue burden upon interstate and intrastate commerce, the trial court found against appellant railroad. Without detailing the evidence, we have concluded and find that it is sufficient to support the judgment. A railroad, to relieve itself of a perpetual duty or requirement founded on an agreement and judgment with the state to maintain certain "shop facilities and terminals," at a named place in a certain manner, as becoming too burdensome on commerce, must "show by clear and satisfactory evidence that it could not perform the duties owing to the public consistent with proper discharge of their reasonable effort." Railway Co. v. City of Ennis (Tex. Civ. App.) 201 S. W. 260; Railway Co. v. Mass, 207 U. S. 79, 28 S. Ct. 26, 52 L. Ed. 111, 12 Ann. Cas. 555. It is true that the railroad proved that by dispensing with and consolidating the particular offices herein involved at Smithville with those of like character at Waco, a probable saving of $21,000 plus annually may have been accomplished, but the trial court had ample reason to exclude the testimony as unsatisfactory, for the reason that the consolidation of the duties of these offices with those at Waco must of necessity entail a larger expenditure of money there. It must also be borne in mind that this expenditure would be and is an indirect burden, and such proof does not show clearly and satisfactorily the fact sought to be established. Railway Co. v. Anderson Co., 246 U. S. 424, 38 S. Ct. 370, 62 L. Ed. 807. Appellant also showed a large expenditure of money on equipment, and in this connection proved that it did not purchase 349.59 miles of the railroad owned by the old companies, and that three division superintendents, instead of five as employed by the old company, were sufficient now to carry on its business. But the proof shows that the two extra superintendents employed by the old company were on the 349.59 miles of road not purchased by appellant. The testimony of the railroad company that, Waco being more centrally located, better access to the properties could be had from there by the division superintendent than from Smithville, was met by proof that the other two division superintendents maintained by appellant were not at central points but rather at the northern terminus of the line.

This contention is also answered by the fact that the judgment and agreement neither require a perpetual maintenance of the "shop facilities and terminals" at Smithville, but there discontinuance or removal may be authorized by the Railroad Commission of Texas. This stipulation showed foresight and care on the part of those making the compromise agreement and judgment; that is, it specifically provided a proper body or tribunal to determine the very question here raised by appellant.

[11] The Railroad Commission of Texas is a constitutional board or tribunal created for the specific purpose of supervising and controlling the operations of railroads within this state. The duty of its members is to become acquainted with and to know the transportation problems and conditions generally as to each railroad. Railroad regulation in every aspect is within its jurisdiction. Sovereignty granted it power to hear and determine all subject-matter of railroad regulation. Its powers are far-reaching and important, and its orders, rules and regulations are subject to review by the courts by the aggrieved party as to their reasonableness and justness. Article 6657, R. S. 1911; R. R. Com. v. Railway Co., 90 Tex. 355, 38 S. W. 750; R. R. Com. v. Compress Co. (Tex. Civ. App.) 264 S. W. 214. With all this in view, the parties to the agreement and judgment contract that the matter of discontinuing or removing the "shop facilities and terminals" at Smithville would be referred to that body. We think the parties not only intended to select a fitting arbitrator of these matters, but intended that it should hear and determine the questions and complaints in this respect in its official capacity. This provision of the contract is absolutely binding upon appellant railroad, and must be

complied with before relief sought by it can be granted. Many authorities might be cited on this proposition. So far as the record discloses, no effort was made by appellant to obtain the relief here prayed for in the manner provided by the contract. It determined it for itself, and the only cogent reason assigned is "because it was considered by the executive authorities of the new company that * * * Waco was a better location." It cannot rightfully be presumed that the tribunal agreed upon will refuse to authorize the removal or refuse to grant relief regardless of the proof, whenever the facts and circumstances show a further compliance with the obligations unduly burdensome from the viewpoint either of public policy or of interstate or intrastate commerce. The effort to have adjudicated in this case, without having even attempted to comply with the agreement and judgment as written in this respect, is premature, and the proposition is overruled.

The judgment of the trial court is in all things affirmed.

Affirmed.